STRONG, Administrator, etc. vs. THE CITY OF STEVENS POINT.

*January 16 — February 3, 1885.*

EVIDENCE: INJURY ON HIGHWAY: DAMAGES: PRACTICE. *(1) Opinions. (2) Husband and wife competent when real parties in interest. (3, 4) Instructions to jury: Inferences as to negligence. (5) Court and jury. (6) Purpose of traveler immaterial. (7) Excessive damages. (8) Bill of exceptions: Stipulation.*

1. The mere opinion of a witness not based upon facts which would justify him in forming an opinion, is inadmissible.
2. In an action brought by a husband, as administrator, for the benefit of himself and his wife, to recover damages for the death of their son, the wife, being a real party in interest, is a competent witness.
3. In an action to recover damages for the death of plaintiff's intestate, caused by falling through a hole in a bridge, instructions that "it may be inferred from the nature and character of the defect, if a defect is found, either that he was or was not in the exercise of ordinary care, considering the time of day and that watchfulness which persons of ordinary caution and prudence usually observe,' and that a defect "may be of such a character that the mind would reasonably conclude, in the absence of other proofs, that a person in the exercise of ordinary care, considering the time of day in which the party was traveling, might have gone into the hole or into the defect, and come to his death in that manner,"— are *held* not erroneous.
4. The fact that a boy eight years old fell through a hole in a bridge, which had existed for a long time and of which he is presumed to have had notice, does not a raise a presumption of negligence on his part which would shift the burden of proof.
5. Evidence that a boy who was crossing a bridge was seen near a hole therein, that a few seconds later he had disappeared, and that his body and his hat were found in the water below a short distance from the hole in the direction of the current, is *held* sufficient to justify a finding that he fell through such hole.
6. The ulterior purpose of a traveler in crossing a bridge cannot affect his right to have it in a reasonably safe condition for such use.
7. Damages of $1,200 for the death of a boy eight years old, whose parents were poor and had a large family, are *held* not excessive.
8. A stipulation by counsel, filed with the record, to the effect that the bill of exceptions contains all the evidence, will estop them to deny that fact, although there is no certificate of the fact appended to the bill.

APPEAL from the Circuit Court for *Columbia* County.

Action to recover damages on account of the death of the plaintiff's intestate caused by his falling through a hole in a bridge in the defendant city. The accident occurred June 25, 1881. The circumstances are sufficiently stated in the opinion. The circuit court charged the jury, among other things, as follows:

" The next question to which I come is, Was the deceased in the exercise of ordinary care himself at the time of the accident? There seems to be no proof, no eye witness saw him if he went through the hole and was drowned in this manner, or how he was traveling, or what he was doing at the time. This is not necessary in order perhaps to properly arrive at a solution of this question. It may be inferred from the nature and character of the defect, if a defect is found, either that he was or that he was not, considering the time of day and that watchfulness which persons of ordinary caution and prudence usually observe. . . . If all the evidence in the case is equally consistent with either care or negligence, the plaintiff cannot recover. That is, there must be a preponderance of proof that he was in the exercise of ordinary care, and what I have just said may tend to help you in the understanding of that instruction as well as that which I have given. Conclusions are sometimes properly arrived at by inferences. I might illustrate. It is not necessary, perhaps, but I will say that a defect in a highway might be so prominent and open and apparent that if a person was found to have fallen into or through it, every one of common and ordinary experience and judgment would at once say that such person must have been negligent, although no one saw him, no one saw how he was conducting himself at the time, that he must have been negligent, could not have been exercising ordinary care. And then again, it may be of such a character that the mind would reasonably conclude, in the absence of other proofs, that a person in the exercise

Strong, Adm'r, etc. vs. The City of Stevens Point.

of ordinary care, considering the time of day in which the party was traveling, might have gone into the hole or into the defect, and come to his death in that manner. And it is for you, with these instructions, to draw your conclusions," etc. The jury rendered a verdict for the plaintiff for $1,200. A motion to set aside the verdict and for a new trial was overruled, and judgment entered upon the verdict. From this judgment the defendant appeals.

For the appellant the cause was submitted on the brief of *G. W. Cate.* To the point that the wife of the plaintiff was not a competent witness, he cited *Birdsall v. Dunn,* 16 Wis. 235, and cases cited in note; *Carney v. Gleissner,* 58 id. 674; *Stewart v. Stewart,* 41 id. 624, and cases cited. As the deceased was not a traveler, but was on the bridge simply for play, there could be no recovery. *Harper v. Milwaukee,* 30 Wis. 365; *Hawes v. Fox Lake,* 33 id. 438; *Blodgett v. Boston,* 8 Allen, 237; *Chicago v. Starr,* 42 Ill. 174; 67 Me. 167; *Stinson v. Gardiner,* 42 Me. 248; *Lyons v. Brookline,* 119 Mass. 491; *Cummings v. Center Harbor,* 57 N. H. 17; *McCarthy v. Portland,* 24 Am. Rep. 23, and note; *Richards v. Enfield,* 13 Gray, 344; *Gribble v. Sioux City,* 38 Iowa, 390; 2 Thompson on Negligence, 1201.

For the respondent the cause was submitted on the brief of *Raymond & Haseltine.*

ORTON, J. This action is brought under secs. 4255, 4256, R. S., to recover damages for the benefit of his father and mother, occasioned by the death of their infant son of about the age of eight years, caused by a defect and want of repair of one of the bridges of said city. Edward Strong, the deceased, was the son of the plaintiff, who sues in a representative capacity, as administrator of the estate of the deceased, for himself and his wife, the mother of the deceased, as his lineal ancestors.

The bridge spanned a wide slough, connected with the

Wisconsin river, and on one of the principal streets of said city, running north and south, and had a railing on the east side about three feet high, and the bridge was two feet and six inches above the surface of the water.   On the east side of the bridge and in the traveled part thereof there was a hole about three feet long and about ten inches wide which had existed for a considerable length of time.

The testimony tended to prove that the deceased lived with his parents in a house about sixty rods north of the bridge, and on the day of his disappearance he left home and went towards the bridge, and then upon the bridge, and walked along on the east side towards and in the vicinity of said hole, and suddenly disappeared from the sight of the only witness who saw him go towards and on the bridge.   His hat, which was of straw and large, was found in the water west of the hole, and his body was found in the water about six feet west of the hole, in the direction of the current of the water in the slough caused by an east wind, and under the bridge.   When last seen, the deceased was walking on the east side of the bridge, in the traveled track on that side, towards the south end of the bridge, as if intending to pass over it.   There was machinery in operation near the south end of the bridge, that might have attracted his attention as he was approaching it.   The principal witness was a youth by the name of Sherwood, who lived about 1,000 feet from and in sight of the east side of the bridge, across a bend in the slough, and who would have to go west, and then south around certain buildings, to approach the bridge; and he testified that he saw the deceased before he got to the bridge, and then again when he went on, and, lastly, when he was about half way across the bridge.   He was standing where he could see the head of the deceased above the railing of the bridge.   He looked around about five seconds towards his own house, and then looked again towards the bridge, and the deceased had disappeared.

These are substantially the main facts which need to be considered in disposing of the questions involved in the record. One ground for the motion to set aside the verdict for the plaintiff, and for a new trial, was that the verdict was against a preponderance of the testimony. Without recapitulating the evidence, but after its careful consideration, we think that it was sufficient to warrant the jury in finding that the deceased came to his death by stepping or falling through that hole in the bridge, and without culpable negligence on his part or on the part of his parents, and by the culpable negligence of the city defendant in not repairing such a gross defect in the bridge after ample notice of its existence. The other errors assigned will be disposed of in their order.

1. The two questions put to the witness Wade (1) whether the hat of the deceased could go through the hole; and (2) whether the witness Sherwood could see the head of the deceased above the railing of the bridge from the place where he stood, are alike in principle, and may be disposed of together. Objection to the question whether the witness laid his own hat on the hole to see whether it would go through, after having testified that he saw the hat of deceased and that it was larger than his own, was properly sustained, because the witness had not compared the two hats by measurement, and had not stated the size of either of the hats or of the hole, and he was asked for a mere opinion, without any *data* from which it could be correctly formed; and without such *data* it was immaterial whether he placed his own hat on the hole to see whether it would go through or not, and the disposition of this preliminary objection prefigures the true ruling upon the above question. The witness had not testified that he ever stood where the witness Sherwood stood when he saw the head of the deceased above the railing of the bridge, to determine whether he also could have seen the head of a boy of his age and

size above the railing, and had not testified that he knew the height of the deceased boy, or to any other fact upon which he would be justified in forming or stating any such opinion, and so as to whether the hat of the deceased would, in his opinion, go through the hole. The size of the hat and of the hole are the necessary facts for even the jury to find the conclusion whether his hat could or could not go through the hole. The admission of such evidence would establish the rule that a witness might state his opinion, not based upon any facts which would bind or influence the jury, when the jury would not be justified in forming any such opinion for themselves. The hat was of straw, and easily bent and compressed, and how could the witness know that it could not go through the hole? The question whether, in the opinion of the witness, the deceased boy was tall enough, so that his head could be seen above the railing, is alike objectionable, because he had not stated, and no one had stated, the exact height of the boy. All such facts are not matters of opinion but of proof.

The rule which excludes such evidence as this was recognized by this court as to evidence very similar in *Veerhusen v. C. & N. W. R'y Co.* 53 Wis. 689. See, also, 1 Greenl. Ev. § 441; *Joyce v. Maine Insurance Co.* 45 Me. 168; *Whitmore v. Bowman*, 4 G. Greene, 148; *Ames v. Snider*, 69 Ill. 376; *Bissell v. Wert*, 35 Ind. 54. It may be observed in this connection that there was evidence without objection that boys as large and larger than the deceased had been through that same hole.

2. A Mrs. Strong was sworn as a witness for the plaintiff, and objection was made on behalf of the defendant that she was incompetent because she was the wife of the plaintiff. It is true, as contended by the learned counsel of the plaintiff, that at that stage of the case it did not appear that she was the wife of the plaintiff, but on her examination it soon appeared that she was the mother of the deceased boy, and

it had already appeared that the plaintiff was his father; and it would be quite too technical now to insist that there was no sufficient proof of their marriage to justify the objection. The question is an important one, and should be well considered. It has been already stated that the plaintiff sues in his representative capacity as administrator of the estate of the deceased, and for the benefit of his lineal ancestors, who are the plaintiff and his wife, in equal interest. The only statutory exception to the common-law rule that husband and wife may not be witnesses for or against each other, is when they are parties to the same action. When husband and wife are parties to the same suit, they may testify as other witnesses, notwithstanding their interest in the suit and their marital relations. Laws of 1858, ch. 134, sec. 2; *Barnes v. Martin*, 15 Wis. 240; *Hackett v. Bonnell*, 16 Wis. 471; *Carney v. Gleissner*, 58 Wis. 674.

The language of the statute is: " A party to a civil action or proceeding may be examined as a witness," etc. May this statute be construed to embrace real parties in interest when they are not nominal parties to the action? If so, then the real parties in interest, if they are husband and wife, may testify in the action. Parties in interest, or those persons who are interested in the event of the suit, by the common-law rule were incompetent as witnesses by reason of their interest alone; but the same statute, in section 1, provides that " no person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the same, as a party or otherwise," etc. It is by reason of their interest in the event of the suit that the nominal parties to it are disqualified. They were never disqualified simply because they were parties. It was because they were also parties in interest. By force of the statute, which does not except husband and wife, all parties are allowed to testify in their own behalf. If parties in interest, who are not made nominal parties to the action, are

debarred from testifying as witnesses in the suit because of their marital relations, and may become qualified to do so by being made nominal parties, then, in such a case as this, where the husband and wife, who are jointly and exclusively interested in the subject matter of the suit and entitled to the damages recovered, cannot be made nominal parties to the action, but the suit must be brought by an administrator, as the personal representative of the deceased, for their benefit, they are debarred from testifying in their own behalf in violation of the obvious spirit and intention of the statute.

Then, again, in this case the father of the deceased is the administrator and the plaintiff. As administrator, he may testify, by the terms of the statute, because he is a party plaintiff, but as the father of the deceased and husband to his mother, he may not testify, because his wife is equally interested with him in the subject matter of the suit. If, in such a case, the husband, as such, may testify as a witness for or against the interest of his wife in the same action, so should the wife be allowed to testify. The statute should have no such absurd construction, and was no doubt intended to qualify all persons who are the real parties in interest to become witnesses in the cause without excepting those who happen to be husband and wife. In cases where the husband and the wife are equally and exclusively interested in the subject matter of the action, and the husband is allowed by the statute to testify as a witness for himself, the marital disqualification ceases. 1 Whart. Ev. § 423, and cases cited in note. Where the husband sues in a representative capacity as *prochein ami* or administrator, he is not thereby such a party in interest as to exclude his testimony or that of his wife. *Leavitt v. Bangor*, 41 Me. 458; *Bonett v. Stowell*, 37 Vt. 258. The wife may be a witness for her husband when he brings suit for the contents of a lost trunk, because he may be. *McGill v. Rowand*, 3 Pa. St. 451; *Illinois*

*Cent. R. R. Co. v. Taylor*, 24 Ill. 323. Where the husband and wife have an interest directly involved in the suit, although not nominal parties, by the common-law rule neither of them could testify. 1 Greenl. Ev. § 341. But by the statute, the husband is not disqualified on the ground of interest, and if so, neither is his wife. A residuary legatee is a competent witness in an action brought by the executor to recover moneys due the estate *(Freeman v. Spalding*, 12 N. Y. 373); and a distributee is competent in an action by the administrator *(Butler v. Patterson*, 13 N. Y. 292); and the next of kin when there is no other party interested in the estate. *Quin v. Moore*, 15 N. Y. 432.

These rules do not exclude the wife any more than the husband, and they are directly applicable to this case, where the recovery is for their benefit by action brought by an administrator. Their interests are joint, and cannot be in conflict so as to influence their testimony to the disturbance of their domestic relations. If some other person had been made administrator of the estate of the deceased and had brought this suit, then there can be no doubt but that both the husband and wife, as father and mother of the deceased, would be competent witnesses under the statute. I have pursued this subject further because I find no express adjudication of the question. We hold, therefore, that in such a case as this both the husband and wife are competent witnesses under the statute.

3. The only exceptions to the charge of the court discussed in the brief of the learned counsel of the appellant are to the two instructions: (1) That "it may be inferred from the nature and character of the defect, if a defect is found, either that he was or was not [in the exercise of ordinary care], considering the time of day and that watchfulness which persons of ordinary caution and prudence usually observe;" (2) "and then again, it [the defect] may be of such a character that the mind would reasonably conclude,

in the absence of other proof, that a person in the exercise of ordinary care, considering the time of day in which the party was traveling, might have gone into the hole or into the defect, and come to his death in that manner."

The objection to the first above instruction is that the *inference* from the defect, considering the other circumstances named, might be that the deceased was in the exercise of ordinary care. This question was properly submitted to the jury, or it was not. If the inference from the defect and surrounding circumstances must be that the deceased was not in the exercise of ordinary care, then that was conclusive of the case; and it was such negligence in law that no recovery could be had. If the jury were to be allowed to pass upon the question at all, it is difficult to see how it could have been more properly submitted to them.

The objection to the other instruction is that the deceased *might* have gone into the whole while exercising ordinary care. This objection is already disposed of. If the jury had been told that the deceased *could not* have gone into the hole while exercising ordinary care, that would have ended the case, and they would have nothing more to find. The contention is that the jury might determine the question upon a mere *possibility* that the deceased went into the hole while using ordinary care, without proof that he did use ordinary care. But in order for the jury to find from the evidence that he did use ordinary care, they must first find that it was possible for him to have gone into the hole while using ordinary care.

The jury were very clearly and fully instructed in the law of the case, and there does not appear any error therein. In connection with the points made on these instructions, it is contended by the learned counsel of the appellant that there is a just inference of a want of ordinary care by the deceased, in falling through a large hole of which his father and others had for a long time had notice, and of which he is presumed

to have had notice, which made it necessary for the plaintiff to prove, at least *prima facie* and affirmatively, that he was not wanting in ordinary care. I do not think that there is any such *inference.* There may have been circumstances which caused the deceased to forget for the moment such a defect in the bridge, or his attention might have been diverted by other things in view, and an inference of negligence would exclude all of these circumstances or conditions. It is a fair presumption that a boy of the age of the deceased would not have stepped or fallen through that hole if he had seen it, and that his attention was diverted or that he did not all the time look down before his feet. *Ewen v. C. & N. W. R'y Co.* 38 Wis. 613, is closely in point. There, the boy was eight years old and went on the railroad track, and did not observe the approaching train. There being no inference or presumption of a want of ordinary care by the deceased, the burden was upon the defendant to show the want of it. *Hoyt v. Hudson,* 41 Wis. 105.

4. It is contended by the learned counsel for the appellant that there was no evidence that the boy fell through the hole of the bridge. The testimony of the Sherwood boy, though in a measure circumstantial, is nearly conclusive that he did. He saw him on the same side of the bridge near the hole, and looked away a few seconds only, and he had disappeared, and he could have seen him all the way across the bridge if he had passed over it, and he did not see him again. The place where the body and hat were found, in relation to the hole, indicated that he had fallen through it. These facts are sufficient to warrant the jury in finding that such was the manner of his death.

And it is also contended that the parents of the boy were negligent in allowing him to go across the bridge when they knew it was so unsafe by reason of the hole. The case was tried and the instructions are based upon the theory that the boy was old enough to be responsible for his own negligence;

and he certainly was; and his want of ordinary care, if shown, would have defeated a recovery. In this case, would the jury have been justified in finding that the parents of the deceased, who was of the age of eight years, were guilty of a want of ordinary care in allowing him to pass over such a bridge and thoroughfare because there was a hole in one side of it? They must be presumed to have trusted and had confidence that the boy would himself exercise ordinary care and not fall through such a hole in the bridge. But it is sufficient that such a question was not raised in the case, and no instruction asked upon it.

5. It is contended that the deceased boy was not a traveler upon the highway but that he was on the bridge for mere play, sport, or pastime. The court instructed the jury upon that question fully and correctly, and left it with the jury to determine whether the boy was there for play or pastime, and not for the purpose of going over the bridge as any traveler would. There can be no dispute about the law in such a case. There is no evidence but that the boy was intending and attempting to cross the bridge, and what his ulterior purpose was cannot affect his right to have the bridge in a reasonably safe condition for such use. *Stinson v. Gardiner*, 42 Me. 248; *Chicago v. Major*, 18 Ill. 349.

6. Exception was taken to the argument of the plaintiff's counsel to the jury. We can see nothing objectionable in it, and his statement of the public feeling in such a case, as affecting the testimony of witnesses, would seem to be within the range of legitimate argument.

7. The last objection urged against the verdict is that it is excessive. Considering the age and health of the deceased boy, and his prospective usefulness to his parents, in indigent circumstances and with a large family, we think the amount of compensatory damages is not above the sum usual in such cases, and not such as to indicate any undue feeling or prejudice or unfairness of the jury.

The point is made by the learned counsel of the respondent that the bill of exceptions does not contain all of the evidence. There is no certificate to it that it does contain all of the evidence, but there is a stipulation signed by the counsel of the respective parties that it does. Counsel are estopped by such a stipulation from denying that the bill of exceptions contains all of the evidence, and this court will hold them in such high honor and respect as not to question the truth of their stipulations in writing and filed with the record in this court. We have, therefore, treated the case as if the whole evidence was contained in the bill of exceptions, as we have no doubt it is. We can find no error in the record, or any good cause for reversing the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.