Burns v. The Chicago, Milwaukee & St. Paul R'y Co.

69  450
92  332;
69  450
95  171
69  450
102  510
69  450
113  132

BURNS v. THE CHICAGO, MILWAUKEE & ST. PAUL R'Y Co.

1. **Railroads:** UNDULATING TRACK: PROPER APPLICATION OF BRAKES: EXPERT TESTIMONY. Plaintiff's son, who was a brakeman on one of defendant's freight trains, was killed on account of a separation of the train. The train was passing over a portion of the track where there was a sag, then a rise or "hog's back," and then a down grade, and the separation took place when the front end of the train was on the down grade and the central portion was on the "hog's back." *Held* that the opinion of an expert was not admissible to show how the brakes should have been applied to prevent the breaking of the train, but that it was a question for the jury, to be determined from the facts in regard to the weight of the train, the depth of the sag, the character of the "hog's back," and all the circumstances of the case. See opinion for cases followed and distinguished.

2. ———: DUTY TO EMPLOYES: USE OF BEST APPLIANCES. As to its employes, a railroad company is not bound to use the best appliances, but only such as are ordinarily sufficient for the purpose; nor is it required to adopt any new device until its utility has been sufficiently tested, and it has been shown to be, as a whole, better than the appliance already in use for the same purpose.

3. ———: INJURY TO BRAKEMAN: WAIVER OF NEGLIGENCE. No recovery can be had on account of the death of a brakeman occasioned by the breaking of the coupling of a train, where he had experience as a brakeman, knew the character of the coupling used, and continued in the company's employment without objection.

4. ———: ———: ABSENCE OF CONTRIBUTORY NEGLIGENCE: EVIDENCE. Plaintiff's son, an experienced brakeman, when last seen alive, was performing his duty in setting the brakes on a frieght car on which he was riding. A minute later, the train having separated at the first coupling in front of him, he was thrown to the ground, run over by the rear end of the train and killed. Although there was no other evidence bearing on the question of negligence, or of freedom from it, on his part, *held* that the court was justified in submitting it to the jury in an action against the company for negligence. See opinion for authorities *pro* and *con.*

5. ———: PLEADING NEGLIGENCE OF DEFENDANT: PROOF OF THAT OF EMPLOYE. Whether a plea charging a railroad company with negligence can be supported by evidence of the negligence of a co-employe, *quære*, but common fairness requires that if the negligence of an employe is relied upon it should be stated in the pleading.

*Appeal from Clayton District Court.*

FRIDAY, OCTOBER 8.

ACTION to recover damages for the loss of the services of the plaintiff's minor son, who was killed, as the plaintiff claims, by a train on defendant's railway. Trial by jury, judgment for the plaintiff, and the defendant appeals.

*Burton Hanson* and *Noble & Updegraff*, for appellant.

*S. P. Adams* and *A. Chapin*, for appellee.

SEEVERS, J.—The plaintiff's son was a brakeman on a freight train in the employ of the defendant. The defendant was moving a train, consisting of seventeen or eighteen freight cars, westward from McGregor towards Austin. There were three brakemen on the train. Strang was head, the deceased the middle, and Allen the rear, brakeman. There is on the track a sag, then a rise or "hog's back," and then a down grade. When about one half of the train was on the "hog's back," it separated between the fifth and sixth cars from the rear. About the time the sag was reached the plaintiff's son and the rear brakeman were on top of the cars; the deceased being on the fifth car from the rear, and the other brakeman on the car next to the caboose. The evidence tended to show that the deceased set the brake on the car he was on just prior to the separation. His body was found shortly afterwards on the track. He must have fallen from the car to the ground, and been run over by the rear portion of the train. Whether the fall was accidental, and through carelessness on his part, or whether he jumped from the train, there is no evidence tending to show, except that there were some marks or indications on the ground that he struck it first with his feet.

The original petition claimed a recovery on the ground that the deceased was killed "without any fault or negligence

on his part; but, owing to and in consequence of the negligence and want of proper care on the part of defendant in the equipment and operation of said train, he was precipitated under said train."

The defendant filed a motion for a more specific statement, which was sustained; and the plaintiff filed an amendment to his petition, and therein stated the negligence of the defendant, upon which he claimed to recover, as follows: "That while deceased was on the top of the cars of said train, setting brakes, in the discharge of his duty, the train separated into two parts, and in consequence of such separation the deceased was precipitated between the two parts of the train onto the ground, and the rear part of the train ran onto deceased before he could extricate himself, and killed him; that the negligence of the defendant in the equipment of the train consisted in having the couplings which fastened together the two cars which separated so insufficient in construction and arrangement and adjustment and repair as to allow the train to separate, and the negligence of the defendant in the operation and management of the train consisted in operating and managing it in such a careless and negligent manner as to cause or permit it to become separated, as aforesaid, into two parts."

The defendant filed another motion for a more specific statement, and asked that the plaintiff be required to state, " in a general way, the nature of the alleged defects in the equipment of the train, and the connection between such defects and the alleged injury; also, in general terms, the nature of the acts or omission constituting the alleged negligence in the operation of the train, and the connection between such acts or omissions and the alleged injury."

This motion was overruled, and the defendant excepted.

I.   The plaintiff, to maintain the issue on his part, asked a witness the following question: " State what was the usual,

**1. RAILROADS: undulating track: proper application of brakes: expert testimony.** customary and proper method of applying brakes on that train as the forepart went over the 'hog's back.'" An objection to this case was overruled. Thereupon a similar question was asked and objected to, whereupon the court intimated a doubt as to whether the witness had shown himself to be competent to answer it. The competency of the witness was then shown to the satisfaction of the court, and the plaintiff asked the witness the following question: " As the fore part of the train went over the 'hog's back,' state whether or not it was prudent, safe, or a careful way, to apply the brakes to the front part of the train by the head brakeman, and hold it up from the front end." An objection that an opinion of the witness was asked was overruled, and the witness answered: " It was." The plaintiff then asked: " For what reason?" The reply was: " I don't know. It is only my opinion." The defendant moved the court to " exclude the answer," which was sustained. We have set out all that occurred, for the reason that the plaintiff insists that all the evidence was excluded, and the defendant, that only the answer to the last question was struck out.

When what afterwards occurred is considered, we think the position of the plaintiff cannot be sustained, for the plaintiff asked the witness to " state whether or not it is the practice to do in that way," and " you may state whether or not the train would be any more likely to break in two going over the 'hog's back,' if it was not held up by applying brakes at the head." Objections to these questions were overruled, and to the first question the witness responded, " It is," and to the last, " It would." The only evidence tending to show negligence on the part of the employes is that the head brakeman failed to apply the brakes before the train separated, and therefore the materiality of the foregoing evidence is apparent. ,It may be conceded that the witness had shown himself to be competent as an expert, but we think the evidence was incompetent. Conceding

that the brakes should be applied, we think that it was for the jury to say to what part of the train such application should be made. When the train began the ascent of the "hog's back" there would be a slack, and when it went over and pitched down the grade, the slack would be exhausted in a greater or less period of time. Now, if either end of the train was held back, the tendency would be to ease the strain, and make the jerk or tension less than it would otherwise be. We mean, of course, if the brakes were applied to the rear end as that portion went down the sag. Whether the train would be more likely to break in two if brakes were not applied to the front part of the train, or whether it was safe and prudent to do so, it seems to us, the facts being shown, could be determined by the jury as well as by the witness. The evidence in question, we think, is similar, if not identical, in principle to that held inadmissible in *Hamilton v. Des Moines Val. R. Co.*, 36 Iowa, 31; *Muldowney v. Illinois Cent. R. Co.*, Id., 462; *Way v. Same*, 40 Id., 341; *Belair v. Chicago & N. W. R. Co.*, 43 Id., 667; *McKean v. Burlington, C. R. & N. R. Co.*, 55 Id., 192.

The question as to the proper position of brakemen on a train is materially different, and so is the question as to the possibility of so controlling a train so as to avoid injuring stock on the track which came thereon within a certain distance of the train; and so is the proper construction of cars under the circumstances appearing in *Baldwin v. Chicago, R. I. & P. R. Co.*, 50 Iowa, 680; and therefore that case and *Cincinnati & Z. R. Co. v. Smith*, 22 Ohio St., 246; and *Bellefontaine & I. R. Co. v. Bailey*, 11 Id., 333, are distinguishable.

The weight of the train, the depth of the sag or down grade, and the character of the up grade or "hog's back," must have a material bearing on the question as to the probability of the train's breaking in two; and, when the facts were shown, we think it was for the jury to say whether the employes of the defendant were negligent in failing to apply

the brakes, or when they should be applied. There were other questions of similar import asked other witnesses, to which the same rule must be applied.

II. The fifth car from the rear of train was equipped with the "Potter draft-iron," which has three couplings,— one in the center, and one on each side. When two cars thus equipped are to be coupled together, it is usual to use the two side couplings. The sixth car from the rear only had one center coupling, and therefore the cars were so coupled. It may be that the two side couplings of the Potter draft-iron would be more secure than the single center coupling. The accident was caused by the breaking of the pin used in making the coupling; but there is no evidence showing that it in any respect was improperly constructed, or in any respect insufficient, except whatever inference may be legitimately drawn from the fact that it broke. The evidence fails to show that the Potter draft-iron is in general use, or that the center coupling is not ordinarily sufficient to hold trains together. The failure to use the Potter coupling—that is the two side couplings—is the only evidence which tends to show that the train was not properly equipped.

2. ——: duty to employes: use of best appliances.

The deceased must have known how the cars were coupled, and he made no objection thereto, and he is shown to have been an experienced brakeman. As to its employes, the defendant was not bound to use the best appliances, but only such as were ordinarily sufficient for the purposes intended. It does not appear how long the Potter draft-iron had been in use, and that the center coupling preceded it, and was still in use, sufficiently appears. The defendant was not required to adopt every or any new device until its utility had been sufficiently tested, and it appeared to be, as a whole, better than the appliance in use. *McGinnis v. Canada South. Bridge Co.*, 8 Amer. & Eng. R. Cas., 135; S. C., 49 Mich., 466; *Baldwin v. Chicago, R. I & P. R. Co.*, 50 Iowa, 680. We therefore are of the opinion that there was no evi-

dence tending to show that the train was not properly equipped, and therefore the court erred in submitting such issue to the jury.   Or if it be conceded that the pin broke,

*3. ——: injury to brakeman: waiver of negligence.*

and that this constitutes some evidence of negligence, and if it be further conceded this would not have occurred if the couplings had been made as is proper and usual with the Potter draft-iron, still, as the deceased had knowledge of the coupling used, and made no objection thereto, the plaintiff has no just ground of complaint in this respect.

III.   The defendant insists that there is no evidence of negligence on the part of the employes, and that the plaintiff

*4. ——: ——: absence of contributory negligence: evidence.*

failed to show that his son was not guilty of contributory negligence.   The only evidence of negligence, as we have said, is that the forward brakeman failed to apply the brakes at the proper time. This must necessarily depend on the condition of the track, —that is, the character and extent of the grade,—and perhaps other matters should be considered.   It must be confessed that there is little or no evidence except the fact that the pin broke and the train separated.   Whether this alone is sufficient to authorized a recovery we do not determine, for the reason that on another trial the evidence may be materially different.

As to the other question, all that appears is that the deceased was an experienced brakeman, of good habits.   It must be presumed that he was in his proper place, engaged in the performance of his duties; that he properly applied a brake on the fifth car, but at which end does not clearly appear, but it may be the jury was authorized to find that the brake was near the forward end of the car.   The train separated between that car and the one preceding it, and, in some manner unknown, the deceased fell from the train. When last seen alive, the deceased was in a proper manner performing his duties, and therefore was not negligent.   In

about one minute afterwards he disappeared, and was probably then dead.

There are cases which hold, when the evidence wholly fails to show that the deceased was using due care, that there cannot be a recovery. *Corcoran v. Boston & A. R. Co.*, 133 Mass., 507; *Riley v. Railroad Co.*, 135 Id., 292. It has been said that " when circumstances point just as much to the negligence of the deceased as to its absence, or point in neither direction, the plaintiff should be nonsuited." *Cordell v. New York Cent. & H. R. R. Co.*, 75 N. Y., 330. This court, however, has held that the jury may infer due care under circumstances quite similar, if not in principle identical, with the case at bar. *Greenleaf v. Illinois Cent. R. Co.*, 29 Iowa, 14. See, also, *Allen v. Willard*, 57 Pa. St., 374, (380); *Gay v. Winter*, 34 Cal., 153; *Strong v. City of Steven's Point*, 62 Wis., 255; S. C., 22 N. W. Rep., 425. This last case is much like the case at bar.

We are not prepared to say that there was no evidence which authorized the court to submit the question of due care on the part of the deceased to the jury, who had the right to consider all the circumstances, including the known habits of the deceased, and the instincts of self-preservation with which all men are imbued. If the cause or manner of the death were wholly unknown, it may be that a different rule should prevail.

IV. It will be observed that the only negligence charged is that of the defendant, while the negligence proved is that of an employe,—a brakeman,— and it cannot be claimed that he is a vice-principal. The appellant contends that when the stated negligence is that of the defendant it cannot be established by showing that a brakeman was negligent. This, under the statute making railway corporations liable for the negligence of co-employes, and our Code system of fact pleading, presents an interesting question, which we do not feel called on to determine, for the reason that the plaintiff

can readily amend, and state more particularly the negli-
gence,. and what employe was negligent. A fair statement
of the grounds of negligence, including the employe so
guilty, should in all instances be made. Common fairness
requires this much.

For the reason stated, the judgment is

REVERSED.