WASKOW, Respondent, VS. ROBERT L. REISINGER & COM-
   PANY, Defendant: CONSOLIDATED SHEET METAL
   WORKS and another, Appellants.

*April 5—May 1, 1923.*

*Negligence: Building in course of construction: "Place of employ-
   ment" under statute: Res ipsa loquitur.*

1. Where the construction of a building was let piecemeal to
   various contractors, none of whom had complete control and
   custody thereof, the building was a "place of employment"
   though the corporate owner had not commenced to occupy it
   for its permanent business, and it was liable as "owner"
   under sub. (1) and (13), sec. 2394—41, Stats., for injuries
   to one falling down an elevator shaft which was not properly
   guarded.
2. It is not clear that negligence might not be inferred where a
   door handle installed by defendant came off, causing plaint-
   iff to fall into an open elevator shaft in a building in course
   of construction, the door being new and the handle being
   only recently adjusted to it; but the case does not rest on
   the doctrine of *res ipsa loquitur* alone, as all the evidence as
   to the manner in which the handles were affixed to the doors,
   their use, and the facts as to the accident, was before the
   jury, which might draw all proper inferences.

APPEAL from a judgment of the circuit court for Milwau-
kee county: A. H. REID, Judge.  *Affirmed.*

This is an action to recover for personal injuries sus-
tained by plaintiff as a result of falling down an elevator
shaft in an unfinished building.

Plaintiff is a plumbing contractor.  Defendant *Trapp
Brothers Dairy Company* was the owner of the building
under construction.  It hired an architect to supervise the
work, and let contracts for the construction of certain parts
of the building.  The contract for the concrete and mason
work was let to defendant *Robert L. Reisinger & Company,*
hereafter called *Reisinger Company;* the sheet-metal work
to defendant *Consolidated Sheet Metal Works.*  Plaintiff
held the plumbing contract.

The building was of reinforced concrete and tile, two

stories high.  Upon the roof, above the elevator shaft, there was a small house constructed in which certain elevator machinery was to be placed.  A metal-covered door gave access to the roof.  Just inside this door there was a cement platform, or step, level with the roof, about two and one-half by three feet wide.  A ladder had been placed between the second floor and this platform.

Plaintiff testified that on December 27, 1920, about 4 o'clock, he was instructed by the architect to examine certain plumbing on the roof; that he ascended the ladder and went upon the roof; that as he returned and pulled the door shut the handle came off, causing him to fall backward into the elevator shaft.  Plaintiff alleged that his injuries were due to the failure of the defendants to properly attach the door handle and to their failure to guard the elevator shaft as required by statute.

An order of the industrial commission in effect at the time provided:

"All openings in floors, whether such floors are temporary or permanent, must be inclosed with substantial temporary railings not less than thirty-four inches high.  Such railings must be constructed by the contractor who constructs the temporary or permanent floor, and must be constructed as soon as the floor around the opening is put in place; and must be left in place until the building is completed.  Every scaffold adjoining a floor opening must have a railing on the side next to the opening."    3503, Orders of Industrial Commission.

Defendant *Consolidated Sheet Metal Works* denied that the door was improperly installed or the handles improperly fixed, and denied that it was under any obligation to place guards around the elevator shaft.

Defendant *Reisinger Company* admitted that it had the contract for the mason and concrete work, but denied that it was at work on the day of the accident, and denied that any negligence on its part contributed to the injury.

Defendant *Trapp Brothers Dairy Company* denied all allegations of negligence, and by way of cross-complaint against the *Reisinger Company* alleged that that company agreed to indemnify the *Trapp Company* against any liabilities which might result from the carelessness of the *Reisinger Company;* and that as a result the *Reisinger Company* was bound to hold harmless the *Trapp Company* against any judgments that might accrue by reason of the facts set forth in the complaint. An amended cross-complaint was filed in which an order of the industrial commission, quoted above, was set out; and it was alleged that this order had not been complied with by the *Reisinger Company.*

Robert L. Reisinger testified that he was the secretary of the *Reisinger Company;* that the company did the excavating, mason and concrete work on the building; that the work was commenced in May and finished about December 4, 1920; that the concrete roof of the elevator house was poured previous to October 22d; and the shoring was removed about November 20th. Testimony to the same effect was given by several of the employees of the company. Plaintiff at one time during his testimony said that on the day he was hurt the shoring had been removed.

Further testimony was given to the effect that when the shoring was removed the *Reisinger Company* built a railing around the elevator shaft and let it remain after the work was completed.

It appears that after the accident the *Reisinger Company* did some work on the floors, which work was occasioned either by a change or an error in the plans, and that this work was paid for beyond the contract price.

The architect testified that at the time of the accident the shoring was still up in the elevator house and that no guard rail had ever been placed around the shaft. He also testified that the *Reisinger Company* had not completed its work; that the level of some of the floors had to be changed; and

that all that remained to be done in the elevator house was the tearing down of the shoring.

In a special verdict the jury found that when plaintiff pulled the door shut and fell into the shaft the handle came off as a result of having been improperly affixed when the door was installed; that the improper fixing constituted a want of ordinary care on the part of the *Consolidated Sheet Metal Works,* and that this was a proximate cause of the plaintiff's injury; that on the day of the accident there was no substantial railing along the edge of the elevator shaft, and that the absence of this railing was a proximate cause of the injury; that the interior of the elevator house was not as free from danger to workmen and frequenters engaged in constructing the building as the nature of the house and shaft would permit, and that this condition of the house was a proximate cause of the plaintiff's injury.

It was further found that the *Reisinger Company* had erected a substantial railing along the edge of the elevator shaft and had maintained it until it completed its original contract with *Trapp Brothers Dairy Company;* that no want of ordinary care on the part of plaintiff proximately contributed to his injury; and that plaintiff had suffered damage in the sum of $8,166.66.

Judgment for that amount was ordered against defendants *Consolidated Sheet. Metal Works* and *Trapp Brothers Dairy Company.* The complaint of plaintiff and the cross-complaint of defendant *Trapp Brothers Dairy Company* were dismissed as to defendant *Robert L. Reisinger & Company.*

For the appellants there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles.*

For the respondent *Waskow* there was a brief by *Alfred Kay,* attorney, and *Irving A. Fish,* of counsel, both of Milwaukee, and oral argument by *Mr. Kay.*

For the respondent *Robert L. Reisinger & Company* there

was a brief by *Samuel M. Field*, attorney, and *Olwell, Durant & Brady*, of counsel, all of Milwaukee, and oral argument by *Mr. Field*.

JONES, J. The issue between the *Trapp Brothers Dairy Company* and the *Reisinger Company* on the cross-complaint involved purely questions of fact. The following portion of the opinion of the trial court very well states the nature of the issue between these parties and the conclusion reached:

"The findings of the jury, including the finding that *Reisinger & Company* had constructed and maintained a substantial railing at the top of the elevator shaft until it had completed its original contract, appear to the court to be fairly sustained by the evidence. Therefore no change in any of the answers of the jury to the questions in the special verdict should be made.

"Upon these findings I think that the responsibilities of *Reisinger & Company* to guard the top of the elevator shaft had ended before plaintiff's injury. The further work done by *Reisinger & Company* upon the lower floors in order to get the proper grade of slope was arranged for under a new oral agreement and cannot be considered as a continuation of the written contract. There appears to have been a considerable interim after the completion of the work under the original contract and before the discovery that the floors needed reshaping. It cannot be justly contended that during that period the responsibility of *Reisinger & Company* to maintain in a safe condition the structures that were erected, continued beyond the completion of such structures, merely because later the owner of the building desired some further work done not covered by the original contract. For this reason the court is of opinion that *Reisinger & Company* are not under liability either to plaintiff or to the defendant *Trapp Brothers Dairy Company.*"

There was considerable testimony relating to the time of completion of the work by the *Reisinger Company* and much of it was conflicting. There was sufficient credible evidence

to support the finding of the jury and the court and we see no good reason for the reversal of such finding.

The plaintiff bases his claim against the *Trapp Brothers Dairy Company* on several statutes. Sec. 2394—48 requires every employer and every owner of a place of employment or a public building to so construct, repair, or maintain such place of employment or public building as to render the same safe, and every architect is required to so prepare the plans for the construction of such buildings as to render them safe.

Sub. (1) and (13), sec. 2394—41, Stats., are as follows:

"(1) The phrase 'place of employment' shall mean and include every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is directly or indirectly, employed by another for direct or indirect gain or profit, but shall not include any place where persons are employed in private domestic service or agricultural pursuits which do not involve the use of mechanical power."

"(13) The term 'owner' shall mean and include every person, firm, corporation, state, county, town, city, village, manager, representative, officer, or other person having ownership, control or custody of any place of employment or public building or of the construction, repair or maintenance of any place of employment or public building, or who prepares plans for the construction of any place of employment or public building. Said sections 2394—41 to 2394—71, inclusive, shall apply, so far as consistent, to all architects and builders."

Counsel for *Trapp Brothers Dairy Company* argue that it was not an employer within the meaning of the statute and therefore not required to furnish a safe place to the contractors, their employees, or other frequenters. It is contended that the statute does not apply to the owner until the place becomes a place of employment except as to the duty to

prepare proper plans and specifications; that if the building is not a place where his business is carried on there is no statutory liability to employees or frequenters; that up to March 1st, the time when *Trapp Brothers Dairy Company* occupied the building for their business purposes, the duty was on the contractors.

It is clear from the evidence and the findings of the jury that at the time of the accident there was no railing and that for that reason the interior of the penthouse was not as free from danger to the safety of workmen and frequenters as the conditions would reasonably permit. As between the several contractors it was undoubtedly the duty of each to so conduct the work under its control as to furnish safe places of employment and to adopt methods reasonably adequate to render the employment and places of employment safe not only for his employees but also for frequenters. This duty, however, does not necessarily relieve the owner of a building under process of construction from liability under the statutes.

The claim of defendant's counsel that under all circumstances an owner of a building of this character owes no duty to so maintain it as to render it safe until he occupies it for his own business purposes seems too narrow a construction of sec. 2394—41. By this statute there is imposed a duty not only on the employer but also on the owner.

The last few lines of this section make an exception relating to private domestic service and agricultural pursuits. The rest of the section is framed in very broad language.

It would be difficult to use broader language describing what is meant by the phrase "place of employment." We are forced to hold that the building was a place of employment; that the language includes the building operations which were being carried on when the plaintiff was injured, although the process of building was temporary and although the defendant had not commenced to occupy the building for its permanent business.

As frequently happens in the enactment of statutes, these sections take some liberty with the English language. They make new definitions and expressly assign new and unusual meanings to words and phrases. For example, the word "owner" is made to include not only those having title to the property, but any one who has the control or custody of any place of employment or public building, or of its construction, or who prepares plans for its construction.

It is contended for the *Dairy Company* that it was not the legislative intent to make naked ownership a test of liability for injuries to employees or frequenters during the process of erection of buildings, and the hardship and injustice which might arise from such a construction of the statute is vigorously argued. It is also contended that a statute requiring the owner to be held for a failure of the contractor to keep his place safe for his workmen or other workmen would be unconstitutional as depriving the owner of his property without due process of law. The facts in this case are such that it becomes unnecessary to decide the question thus raised by defendant's counsel. The plaintiff does not base his claim on the naked ownership of the property.

The work of construction was let piecemeal to various contractors, none of whom had the complete control and custody of the building. The defendant *Dairy Company* and its architect were the only ones having such custody and control. On this state of facts we think that the statutes referred to apply and that the judgment against *Trapp Brothers Dairy Company* should be sustained.

We now come to the question whether the judgment should be affirmed as to the other defendant, the *Consolidated Sheet Metal Works.* · The jury found that the handle of the door had been improperly affixed when the door was installed. There were two handles, each fastened to a long spindle which went through the door. One was fastened by a rivet and the other by a set-screw. The testimony was such that the jury could properly find that the handle fas-

tened to the spindle by the screw was on the inside of the door and that the long part of the handle to which the spindle was permanently attached was on the outside.

It is argued by counsel for defendant that the door handle had been used for some time and that there was no evidence of negligence except it be the inference from the fact that the handle came off. It is claimed by plaintiff that if the handle had been properly affixed the accident would not have happened; that the short part of the handle fastened to the spindle by a screw should have been on the outside and not on the inside, where there was evidently a chance of serious danger if the screw became loose. It is argued that if the handle had been thus adjusted the long spindle would have given some resistance, thus probably preventing the accident. All the evidence as to the manner in which the handles were affixed to the door; their use; and the way in which the accident happened, was before the jury and they had the right to draw from it all proper inferences.

It will be seen that the case of plaintiff does not, as claimed by defendant's counsel, rest alone on the doctrine of *res ipsa loquitur*. It is by no means clear, however, that under the circumstances negligence might not have been inferred from the mere fact that the handle became loose. The door was new, and the handle had only recently been adjusted to it. The defendant offered no rebuttal or explanation. The doctrine *res ipsa loquitur* was thus stated by an English judge:

"But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." *Scott v. London & St. K. D. Co.* 3 H. & C. 596, 601.

This rule has often been declared by this court. *Klitzke v. Webb*, 120 Wis. 254, 97 N. W. 901; *Mulcairns v. Janes-*

*ville,* 67 Wis. 24, 29 N. W. 565; *Cummings v. National F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Kirst v. M., L. S. & W. R. Co.* 46 Wis. 489, 1 N. W. 89.

We cannot say that the finding of the jury on this question, approved by the trial court, should be set aside.

*By the Court.*—Judgment affirmed.