Wm. Esser & Company and another, Appellants, vs. In-
dustrial Commission of Wisconsin and another,
Respondents.

*November 12—December 7, 1926.*

*Workmen's compensation: Unguarded floor openings: Increased
compensation in case of injury to workman: Whether pres-
ence of guard would have prevented accident: Inference
must be drawn from established facts.*

1. Evidence which establishes only the existence of an unguarded
   opening in a building under construction and that the de-
   ceased employee fell through it, the cause of the fall and
   the circumstances thereof being wholly speculative, is *held*
   not to authorize an award of increased compensation, under
   par. (h), sub. (5), sec. 102.09, Stats. 1923, for a violation
   of a safety order of the industrial commission.  pp. 476, 477.
2. The industrial commission may draw inferences from eviden-
   tiary facts, and in the field of inferences from such facts
   its action is final unless it appears that there is an entire
   failure of evidence to support the findings.  p. 476.
3. An inference must be drawn from established facts which
   logically support it.  p. 477.

Appeal from a judgment of the circuit court for Dane
county: E. Ray Stevens, Circuit Judge.  *Reversed.*

The appeal is from a judgment confirming an award of
the *Industrial Commission* directing the payment of an addi-
tional fifteen per cent. increased compensation on account of
the violation by the plaintiff *Wm. Esser & Company* of a
safety order of the *Commission.*

For the appellants there was a brief by *Bendinger, Graeb-
ner, Hayes & Hofer* and *Wallace H. Hahn* and *Maurice A.
McCabe,* all of Milwaukee, and oral argument by *Mr. Hahn.*

For the respondent *Industrial Commission* there was a
brief by the *Attorney General* and *Mortimer Levitan,* assist-
ant attorney general, and oral argument by *Mr. Levitan.*

DOERFLER, J.   There was in force at all times involved herein, a safety order of the *Industrial Commission* known as No. 3509, which provides as follows:

"All openings in floors, whether such floors are temporary or permanent, shall be inclosed with substantial temporary railings not less than thirty-six inches high.   A solid toe-board not less than seven inches in height shall be provided around such openings.   Such railings shall be constructed by the contractor who constructs the temporary or permanent floor, and shall be constructed as soon as the floor around the opening is put in place, and shall be left in place until the building is completed.   Every scaffold adjoining a floor opening shall have a railing on the side next to the opening."

"No contractor or employer shall permit his workmen to work on any floor of a building unless all openings in such floors are protected by substantial railings."

Sub. (5) (h), sec. 102.09, Statutes of 1923, provided:

"Where injury is caused by the failure of the employer to comply with any statute of the state or any lawful order of the industrial commission, compensation and death benefits as provided in sections 102.03 to 102.34, inclusive, shall be increased fifteen per cent."

The plaintiff *Wm. Esser & Company* is a plumbing contractor, and on the 15th day of November, 1924, and for some time prior thereto was engaged in the installation of a system of plumbing in a three-story concrete building in the city of Milwaukee known as the Rendering and Tallow Plant.   The actual work of installation was performed by one Hofrichter, a journeyman plumber, and his helper. Some three weeks prior to the date mentioned, the contractors who had charge of the erection and construction of the building, in order to permit the insertion of a smoke-stack through the third floor, which was constructed of concrete, left a circular opening in such floor having a diameter of about thirty inches.   This opening at no time was guarded with a railing as is required by the order of the *Commission*

above set forth. Hofrichter and his helper, after having installed certain plumbing on the lower floors of said building, on the day of the accident ascended to the roof, in which they cut an opening, preliminary to the insertion of certain sanitary pipes. The roof was reached by a ladder which extended down to the third floor, and back of the ladder and a little to one side thereof was located one of these unguarded stack openings, through which Hofrichter fell, and which resulted in his death.

The evidence introduced at the hearing sheds no light upon the inquiry of how the deceased happened to fall through the opening. The helper testified that he saw the deceased descending the ladder from the roof; that the latter then proceeded to the second floor, then returned to the third floor, and thereafter he saw the deceased falling through the opening. No eye-witness testified that he was on the ladder when he started to fall; nor is there any evidence whatsoever which indicates or from which it can be inferred that the deceased, immediately prior to the accident, was on any particular part of this ladder; nor is there any evidence to the effect that the deceased inadvertently, before attempting to ascend the ladder, stepped into the opening.

It is apparent that the order of the *Commission* was promulgated to promote the safety of employees engaged in the performance of their work upon the various floors of a building, and was designed to prevent their falling through unguarded openings by inadvertence. The specifications included in the order, and the manner of construction, are also persuasive that the *Commission* had in mind the prevention of accidents arising from an inadvertent approach to the opening from the sides thereof and not from the top, for the specifications do not embrace a covering of the opening.

The learned assistant attorney general opens his statement of facts in his brief as follows: "On November 15, 1924, while descending a ladder leading from the third floor to the

roof, Hofrichter fell through an unguarded opening in the third floor and was fatally injured." An investigator for the *Industrial Commission,* a few days after the accident, made an examination of the premises, and upon such examination prepared a report and filed the same with the *Commission.* This report contained the statement that Hofrichter, "while coming down a ladder, . . . in some way fell through a thirty-inch diameter opening in the floor to the floor below. . . . If these openings had been securely guarded, very likely the injured could not have fallen through them." The investigator does not state where he derived information upon which he based his statement that the accident happened while the deceased was descending the ladder. Concededly the only person present when the deceased fell through the opening was his helper. When the investigator, therefore, states in his report that if the opening had been securely guarded the injured very likely could not have fallen through the same, no basis existed warranting such assertion. He did not attempt in his report to fix the place on the ladder where the deceased stood immediately prior to his fall, nor does he describe the position of the ladder, its slant, the distance of the base of the ladder from the opening, or the place on the ladder which was located immediately above or in close proximity to the opening. He contents himself in his report by saying that the deceased "in some way fell through a thirty-inch diameter opening in the floor."

A careful reading of the evidence, together with a painstaking consideration of the facts disclosed, presents a situation which is neither illuminating nor persuasive upon the subject of how the deceased happened to fall through the opening. Any conclusion arrived at would be based upon a mere conjecture. It is true, as is said in *Scott & Howe L. Co. v. Industrial Comm.* 184 Wis. 276, 199 N. W. 159, "It is the province of the *Industrial Commission* to draw inferences from evidentiary facts, and in the field of in-

ferences from such facts its action is final unless it appears that there is entire failure of evidence to support the findings." See, also, *Lewis v. Industrial Comm.* 178 Wis. 449, 190 N. W. 101; *Carey v. Industrial Comm.* 181 Wis. 253, 194 N. W. 339. But an inference must be drawn from established facts which logically support the same. In that respect an inference differs from a mere conjecture. In the instant case we have the following established facts: First, the existence of the unguarded opening; second, the fact that the deceased fell through the same; and beyond this, the cause of the fall and the circumstances thereof are shrouded within the realm of speculation.

We are therefore of the opinion that the award of the *Industrial Commission* is not based upon evidence, and that the order of the *Industrial Commission* awarding increased compensation should have been reversed by the lower court.

*By the Court.*—Judgment reversed.

STEVENS, J., took no part.