UMNUS, Special Administratrix, Respondent, vs. WISCONSIN
PUBLIC SERVICE CORPORATION, Appellant.

*December 5, 1951—January 8, 1952.*

434

For the appellant there were briefs by *Smith & Will* of Green Bay, and oral argument by *Norman H. Smith* and *Fred Will*.

For the respondent there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *E. L. Everson*.

BROWN, J. Defendant submits that there was no need to erect rails or guards around as large an opening as this one, surrounded by so large a safe work space and therefore, as a matter of law, there was no breach of the safe-place statute. It is contended that the danger was so open and obvious that no guard was necessary. We do not find that the statute distinguishes between obvious and hidden dangers. It is clear that the opening constituted a danger and there is plenty of evidence in the record that it was practicable to guard it with a rail, that such a rail would have made the

place of Umnus' employment much safer and would not have interfered with any work which was going on. Under the circumstances we consider it was a jury question whether the defendant had provided a place of employment as free from danger to the life and safety of frequenters as the nature of the employment and the place of employment would reasonably permit. This finding is well supported in the evidence and cannot be disturbed.

Defendant then asserts that there is no proof that its failure to guard the opening caused Umnus' fall into it. The argument is that no one saw him fall, it is not known how or why he did so, and the part played in the tragedy by the lack of a rail is a matter of sheer speculation. Reliance is also put upon the fact that a line drawn vertically from the spot where Umnus landed does not intersect the edge of the hole in the roof at a spot where Umnus would pass closest to the hole if he was on his shortest course for the transportation of material. From this appellant deduces that he was not engaged in his duties at the moment he fell. Umnus did not necessarily leave his employment if he came closest to the opening at one point rather than another. When last seen, a very few seconds before the fall, he was engaged in his work, pushing his wheelbarrow. He had not abandoned the barrow; they fell together. We are unable to deduce that he had abandoned his work and with it his reason for being and his right to be on the roof. We consider he continued to be a frequenter of the roof and entitled to the statutory protection due such a person.

In the matter of causation, defendant relies on *Wm. Esser & Co. v. Industrial Comm.* (1926), 191 Wis. 473, 211 N. W. 150. In that action the commission had increased a death benefit because it found that the employer's disobedience of an order to put a rail around an opening caused the injury and death. It was unknown how the employee fell into the hole or where he fell from. So far the cases are

alike, but the vital distinction between the *Esser Case, supra,* and the present one is that the *Esser* employee's work took him both on the floor beside the opening and upon a ladder over it. In our opinion we pointed out that the railing the commission had ordered was designed to prevent accidents arising from an inadvertent approach to the hole from the side but was quite ineffective when the approach was from the top. Liability for increased death benefit depended on a fall from the floor level, which a rail would have prevented. In the absence of evidence the commission could not by speculation determine that there was such a fall and not one from the ladder above the hole, where the employee also worked, against which the rail would have given no protection; therefore, we said that it had not been proved that the absence of the safeguard caused the death. We do not consider the *Esser Case* is applicable to the present circumstances where the only possible approach to the opening is from the side and the nature and place of the employment would reasonably permit that danger to be guarded against by the erection of a rail.

Of course it can seldom be demonstrated to a mathematical certainty that the victim would not in some way manage to get into trouble even if the other party had performed the duty to provide safeguards, but it is not required that evidence be carried to the point of proof that the safety device would certainly have prevented the accident and, conversely, that its absence certainly caused it. Leaving contributory negligence out of the question for the moment, our decisions, and those of other jurisdictions over the years, demonstrate that when one owing a duty to make a place or an employment safe fails to do it and that accident occurs which performance of the duty was designed to prevent, then the law presumes that the damage resulted from—was caused by—the failure. The presumption may be rebutted, but if not rebutted by evidence, the plaintiff has met his burden of proof. "If the

very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the nonobservance of the law." 38 Am. Jur., Negligence, p. 838, sec. 166. Our reports are full of demonstrations of this principle. ". . . when the employer knows that a dangerous instrumentality which he has located in the 'place to work' is to be brought within the range of the operation to be engaged in by those properly on the premises, he is liable for failure to reduce to a minimum the possibility of danger from that instrumentality." *Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 446, 253 N. W. 579. In *Cooper v. Chicago & N. W. R. Co.* (1914), 155 Wis. 614, 145 N. W. 203, a child fell at a place where the railroad maintained a defective sidewalk crossing its tracks. In rescuing the child its companions were struck by a train. The railroad contended that there was no evidence that the defective planking caused the child to fall. The child might fall, anyway—children do—but we held that a condition efficient to cause the fall existed at this place and the fall occurred with no other facts in the evidence to account for it, and upon this evidence we held that the jury could find that the fall was caused by, and the injuries were the result of, the defective condition of the crossing. So, too, the owner of a building was held liable to the employee of a contractor who fell down an unguarded elevator shaft. The breach of the duty to guard warranted the finding that the lack of a guardrail was a cause of the accident. *Waskow v. Robert L. Reisinger & Co.* (1923), 180 Wis. 537, 193 N. W. 357.

In the instant case we consider that the plaintiff's burden of proof of causation was met when she showed to the jury's satisfaction defendant's duty to fence the opening in the roof, the failure to do so, and the entry of Umnus into the opening in a manner such as an efficient rail was designed to prevent.

Defendant presents the question of contributory negligence and says the danger was so apparent and the proper method for Umnus to perform his work kept him so far from the place where he fell that he must be held, as a matter of law, to be guilty of causal negligence surpassing the negligence of defendant. Contributory negligence is a matter of defense. Defendant has no evidence of Umnus' actual conduct but relies on inferences from the occurrence of the accident itself. The presumption is in favor of the exercise of due care and in death cases especially this has frequently been declared and the protection of the presumption given the deceased until evidence of his negligence is produced. *Prunty v. Vandenberg* (1950), 257 Wis. 469, 44 N. W. (2d) 246; *Witkowski v. Menasha* (1943), 242 Wis. 151, 7 N. W. (2d) 612; *Guderyon v. Wisconsin Telephone Co.* (1942), 240 Wis. 215, 2 N. W. (2d) 242; *Smith v. Green Bay* (1937), 223 Wis. 427, 271 N. W. 28; *Strong v. Stevens Point* (1885), 62 Wis. 255, 22 N. W. 425. We are unable to agree with counsel that Umnus' fall from a spot thirty-four feet away from that part of the opening which he approached closest in his usual journey with the wheelbarrow convicts him of negligence. The fact, alone, if it is a fact, has no such implication. It is not the sort of evidence which destroys the presumption afforded the dead man that he was pursuing his work with due care for his own safety. Furthermore, a person required to work in a place of danger is not required to give that undivided attention to the danger which threatens him as is required of a person with nothing to distract his attention from it. *Hodgson v. Wisconsin Gas & E. Co.* (1925), 188 Wis. 341, 206 N. W. 191; *Criswell v. Seaman Body Corp.* (1940), 233 Wis. 606, 290 N. W. 177. We do not think that the mere fact that Umnus fell into an unguarded opening, which it was the defendant's duty to guard, is evidence that he was negligent. Because he is dead he is presumed to have exercised due care. He was at work and preoccupation

with his work excuses him from giving undivided attention to the danger. We conclude that the jury's finding absolving him of causal negligence must be sustained.

Defendant also submits that Umnus is not entitled to the benefit of the safe-place statute because it was the duty of his own employer as well as that of the respondent property owner to guard the hole and cites *Barrows v. Leath & Co.* (1950), 258 Wis. 154, 44 N. W. (2d) 918. Our decision in that case was on other grounds. In the process of providing a safe place we come to a point where there is no preceding person on whom one may rely to have made the place safe and we deal with the one whose duty it is to go in first and discover the defects and repair or report them. Barrows was such a person. He was injured by a defect which he had failed to discover. We do not consider that the safe-place statute has gone so far as to make the owner an insurer of the person whose job it is to discover and remedy the defect, but this has no bearing on the duty to provide a safe place for Umnus, who does not stand in the position of Barrows in the *Leath & Co. Case, supra.*

Finally, the defendant submits that respondent may not recover death benefits under the Compensation Act from the Meyer Company, Umnus' employer, and damages from defendant. We think that sec. 102.29 (1), Stats., authorizes exactly such an action as the present one.

"102.29 *Third party liability.* (1) The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employee shall not affect the right of the employee, his personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death, . . ."

Defendant, however, maintains the action should not be permitted when, as here, by contract the Meyer Company is obligated to indemnify the owner of the building for any

judgment based upon a violation of the safe-place statute, because Meyer Company will then be paying both workmen's compensation and tort damages. We do not see why Meyer Company may not, if it pleases, contract to indemnify the respondent but we cannot permit such a contract to deprive a third party of rights of action which the statute expressly gives him. Defendant considers itself the party aggrieved and so entitled to raise the point on appeal because it has to pay the insurance premiums for both compensation and liability insurance. We do not spend time on its qualifications as the aggrieved party because we think its principal contention lacks merit.

The respondent moved to dismiss the appeal because of procedural matters concerned with appellant's motion for a reduction in damages, which motion was granted by the trial court with an option which appellant did not accept. We consider that in its motion and in its subsequent conduct, appellant merely preserved the question of damages for argument here, if it chose to argue them, and did not lose its right to an appeal on the other issues. Accordingly, we have considered the appeal on its merits and have reached the conclusion that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting in part*). I dissent only from that part of the majority opinion which relates to contributory negligence of plaintiff's intestate.

The thirty by thirty-eight foot opening in the roof had existed for two weeks prior to the accident and was well known to plaintiff's intestate. It seems to me that the situation is similar to those cases in which stevedore employees have been held contributorily negligent as a matter of law, who have fallen into open and unguarded hatches on vessels upon which they were working. *Brown v. Associated Operating Co.* (1915), 165 App. Div. 702, 151 N. Y. Supp. 531, order

resettled in 167 App. Div. 942, 152 N. Y. Supp. 1101, and judgment affirmed in (1917) 222 N. Y. 566, 118 N. E. 1053; and other cases cited in annotation in 44 A. L. R. 1129.

While I believe plaintiff's intestate was contributorily negligent as a matter of law, the question of comparative negligence still remains a jury question, because a jury might well be warranted in concluding that the negligence of plaintiff's intestate was less than that of the defendant in failing to guard the opening.

I would therefore reverse the judgment and remand the cause for retrial.