RONNING and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*October 18, 1924—January 13, 1925.*

*Workmen's compensation: Independent contractor or employee: Person employed to drive automobile from factory to garage: Findings of industrial commission: Weight: Award in case of death of employee: How determined.*

1. The workmen's compensation act must be liberally construed to accomplish the beneficent purpose for which it was enacted. p. 387.

2. The vital test in determining whether one employed to do certain work is an independent contractor or a mere servant is the reservation by the employer of control over the work. p. 388.

3. A finding of the industrial commission that one hired by a local automobile sales agent to drive a car from an assembling plant in another city was a servant rather than an independent contractor, is warranted, though no actual detailed directions were given as to the manner of performing the work. p. 390.

4. Unless the industrial commission exceeded its authority or was actuated by fraud, the reasonable inference on which it based its findings cannot be disturbed, particularly in view of the rule as to the liberal construction to be given the act. p. 390.

5. Sub. (1) (c), sec. 102.11, Stats. 1923, relative to ascertaining the average annual earnings of an injured employee by having regard to his previous earnings and those of other employees, was applicable in this case. p. 391.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The appeal is from a judgment reversing and setting aside an order of the *Industrial Commission* awarding death compensation.

It appears from the evidence that one *C. O. Ronning* operated a garage and was the local agent at Rice Lake, Wisconsin, for the sale of Ford automobiles. One Carter, an employee of the conservation commission of this state at an annual salary, on the 28th day of July, 1923, was engaged by *Ronning* to convey a Ford car from the assembling plant at Minneapolis to Rice Lake. During the year 1921, for a period of about six or seven months, he was employed by *Ronning* as a salesman and in performing work in and about the garage. Several days before the accident *Ronning* asked Carter if he would come along and drive some cars from Minneapolis to Rice Lake, and Carter was asked what he wanted for doing this, to which he replied, "Anything you say is all right with me." *Ronning* thereupon said, "It always costs me $5 and expenses, no matter which of the boys I send." He then asked Carter whether this was all right, to which he replied in the affirmative. On the morn-

ing of the accident *C. O. Ronning* had with him in his automobile his brother Nels Ronning, one of his employees, and together they called for Carter and proceeded to Cameron Junction, where it was designed that Nels Ronning and Carter should proceed by train to Minneapolis. While on their way to Cameron Junction the passengers in the car met with an accident which resulted in the death of Carter.

*C. O. Ronning* had in his employ about ten men, seven of whom were engaged as mechanics in the garage. These mechanics frequently undertook the trip to Minneapolis, to drive cars from that city to the Ronning garage at Rice Lake, and at times other men were employed for the same purpose. For the work thus performed by the employees and others, *C. O. Ronning* paid the uniform rate of $5 a day, which was the amount paid by him to his mechanics while engaged in garage work. *Ronning* also testified that when his employees were engaged in driving cars from Minneapolis to Rice Lake, this work was figured as a part of their work; that Carter had peculiar qualifications for doing that work, for in the event that any of the cars needed repairs he was able to repair them. *Ronning* also testified that he considered Carter as capable as anybody to take a car over the road.

The *Industrial Commission* made the necessary findings of fact, and among other things found that Carter at the time he met his death was an employee of *C. O. Ronning*, and also found all the other necessary statutory requisites to entitle the widow to compensation. The circuit court set aside the award of the *Industrial Commission*, and found that Carter was an independent contractor.

For the appellants there was a brief by the *Attorney General* and *T. L. McIntosh*, assistant attorney general, for the *Industrial Commission*, and *G. P. Gannon* of Rice Lake, for the appellant *Carter*, and oral argument by *Mr. McIntosh*.

For the respondents there was a brief by *Hanitch, Hart-*

*ley & Johnson* of Superior, and oral argument by *C. J. Hartley.*

The following opinion was filed November 11, 1924:

DOERFLER, J. In enacting the workmen's compensation act, the legislature, in place of the master's liability for damages for negligence to his servant, substituted a uniform compensation to employees who had suffered injury, and a death benefit for dependents. This compensation under the act inured to the benefit of all employees subject to the provisions thereof. This departure, while practically an innovation in this country at the time of its adoption, had been in force for many years in European countries. The principle underlying this act recognizes a public interest in those engaged in the performance of services as employees, and such interest springs from the humane idea that an employee injured or incapacitated or who meets his death in the course of and while engaged in his employment should definitely be provided for by way of compensation based upon a uniform schedule. It is also further realized that the loss or damage incurred is an economic one, which should be borne by the industry in which the employee at the time of his injury is engaged. The measure is a beneficent one, springing from humane motives, and is founded upon sound economic doctrine, and for this reason the rule is universally applied wherever a compensation law has been enacted and is in operation, that its provisions shall be liberally construed to accomplish the beneficent purpose for which it was passed. These fundamental ideas must always be prominently borne in mind when issues raised under the act are to be determined.

The question of whether a person engaged to do work is an independent contractor or an employee is one which is oftentimes difficult to determine. While the general rules laid down in the decisions must be applied to each particular case, it must nevertheless become apparent that in the ulti-

mate analysis the final results arrived at depend largely upon the facts and circumstances of each particular case. "The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer he is a servant; if not under such control he is an independent contractor." 14 Ruling Case Law, 67. Sub. (4) of sec. 102.07 of the Statutes defines an employee as applicable to the instant case.

Plaintiffs' counsel contend that the deceased was an independent contractor; that he was hired to do a particular job for a specified compensation, and that he was not under the control or supervision of any one, and was merely responsible for the delivery of the car at Rice Lake. On the other hand, counsel for the defendants contend that the deceased was at all times under the control and direction of *C. O. Ronning;* that the latter actually did exercise control over the actions of the deceased; that in any event he had the right of direction or control, and could specify the manner in which the work was to be done and the route to be taken; and that it was considered by all the parties that the deceased was to perform the same services as were performed by other employees of *Ronning,* and to be paid in the same manner, viz. at the rate of $5 per day and expenses.

At the time of the accident the deceased was in the employ of the state, in the conservation department, at an annual salary. In the year 1921, for a period of about seven months, he acted as a salesman for *Ronning* and was also engaged in performing needful work in and about *Ronning's* business. The record does not disclose that the deceased had prior to the accident been engaged as a contractor. On the morning of the 28th of July, the date of the accident, *Ronning* designated the time when the deceased started out upon his trip, and he also elected to use his own

automobile. *Ronning* had the exclusive control and management of the car. While *Ronning* had agreed to pay the expenses of the men engaged on this trip, they did not hire a private conveyance, but were driven by *Ronning* in his car. It is true that at the time the deceased was engaged nothing was said with reference to the manner in which the work was to be done. From the very nature of the engagement it would appear that *Ronning* would have no actual supervision or direction of the work; and it does not appear from the evidence that any specific directions were given. The actual performance, therefore, was largely if not exclusively left to the judgment and discretion of the deceased and of Nels Ronning; but while no actual detailed directions or instructions were given as to the manner of performance of the work, it must be apparent from all the facts and circumstances in the case that *Ronning* nevertheless had the power of direction and instruction. He could exercise this power or not, as he saw fit. When it came to the fixing of the compensation the deceased was to receive, reference was had to the pay allotted to other employees who had been engaged in similar work, and the basis for such pay was the amount received by the employees while engaged in the actual performance of their duties as mechanics in the garage. The employment of the deceased was not a haphazard one, but was based upon the prior experience which *Ronning* had with him during his prior service, and the knowledge and ability which the deceased had to not only drive the cars but to perform mechanical services in the event that repairs became necessary. The time necessarily consumed in this trip depended somewhat upon the ability of those in charge of the assembling plant in Minneapolis to give prompt service. It can also be readily inferred that while *Ronning* fixed the compensation at $5 per day and expenses, if a situation had arisen which would have prevented carrying out the agreement in one day *Ronning* would be obliged to pay at the rate of $5 per day for

each day actually necessary to carry out the terms of the contract.

An independent contractor is at liberty, unless the terms of the contract otherwise provide, to assign the contract or to engage others to carry out the same. He is only responsible for the ultimate results. In the instant case it is clear that it was the understanding of the parties that Carter was to perform these services in person and that his contract amounted to one of personal service. This becomes evident upon a reading of the testimony and from the surrounding facts and circumstances, as it appears that Carter was selected on account of his ability to operate a car and to give it his personal attention whenever necessary repairs were to be made on the trip. An independent contractor ordinarily is not paid at the rate received by employees. There enters into such a contract, to some extent, the element of speculation, and the contractor has in mind a consideration which is larger than that received by the ordinary employee. The service of an employee ordinarily is constant and his pay is uniform. Such is not always the case with an independent contractor.

It would appear to us from the foregoing detailed facts that it would be more logical to infer that Carter was engaged as an employee under a contract of service than to hold that he was an independent contractor. The solution of this question, it is true, is connected with some difficulty, but as the matter was presented to the *Industrial Commission,* the *Commission* under such facts could logically draw the inference which it did. The *Commission* did not exceed its authority, and no claim is made, nor can it be made, that it was actuated by fraud. Under such circumstances the *Commission's* reasonable inference upon which it bases its findings cannot be disturbed, particularly in view of the well known rule that the workmen's compensation act must be liberally construed to the end that its beneficent purposes may be fully carried out. *Lewis v. Industrial Comm.* 178

Wis. 449, 190 N. W. 101; *Frank Martin-Laskin Co. v. Goetsch,* 172 Wis. 548, 179 N. W. 740; *Stephenson v. Schelk,* 173 Wis. 251, 180 N. W. 842.

The learned circuit judge set aside the award of the *Industrial Commission,* and based his decision on *Weyauwega v. Industrial Comm.* 180 Wis. 168, 192 N. W. 452. The case referred to clearly presented one of an independent contractor. The deceased in that case agreed to paint a bridge for a specified price, "under a contract which permitted him to do the work in his own way at his own convenience," and the village reserved no control over the details of the work.

Plaintiffs also contend that there was no basis in the evidence to support the finding of average annual earnings and the award of maximum death benefit. We are clearly of the opinion that the *Commission* made the award under sub. (1) (c) of sec. 102.11 of the Statutes. That is the only provision of the statute applicable to the instant case.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to reinstate the award of the *Industrial Commission* and to affirm such award.

JONES, J., dissents.

A motion for a rehearing was denied, with $25 costs, on January 13, 1925.