GUSTAFSON, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Respondents.

*October 14—November 8, 1927.*

*Workmen's compensation: Who is employer: Independent contractor not required to furnish labor.*

Appellant, who owned a portable sawmill, was engaged by the owner of logs to saw them into lumber at an agreed rate, the log owner to furnish the necessary employees. Appellant suggested one N. as a workman, and with the approval of the log owner, and solely as a matter of accommodation, spoke to the said N., who reported for work, and who was injured while riding the carriage to the saw. *Held,* that the respondent N. was not in the employ of the appellant, but of the owner of the logs, and an award against the appellant in proceedings under the workmen's compensation act is reversed.

APPEAL from a judgment of the circuit court for Dane county: A. G. ZIMMERMAN, Circuit Judge. *Reversed, with directions.*

Action was brought in the circuit court to vacate the award of the *Industrial Commission.* The circuit court affirmed the award, and the plaintiff appealed.

For the appellant there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye.*

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent *Charles Gustafson* there was a brief by *Harry L. Reevs* of Rhinelander.

CROWNHART, J. It is the contention of the appellant that there was no credible evidence or reasonable inference to support the findings of the *Commission* that the appellant was the employer of the respondent *Neuman.* The evidence is not in dispute. The appellant was the owner of a portable sawmill. He was engaged by one *Charles Gustafson* to saw certain logs into lumber. He was to receive $8.50 per

Gustafson v. Industrial Comm. 194 Wis. 186.

thousand feet of lumber cut, and *Charles Gustafson* was to furnish the necessary employees to assist in the work. Appellant suggested that *Neuman* should work on the *Gustafson* job, and agreed to see *Charles Gustafson* about employing him. The appellant saw *Charles Gustafson* and reported to the respondent that it was all right. The respondent understood that he was to work for *Charles Gustafson,* and in a report of the accident gave *Charles Gustafson* as his employer. Both the appellant and *Charles Gustafson* testified that the respondent *Neuman* was working for *Charles Gustafson. Neuman* testified that he understood that he was subject to the directions of, and discharge by, *Charles Gustafson,* so that *Charles Gustafson, Hilgar Gustafson,* the appellant, and the respondent *Leonard Neuman* are all in substantial agreement as to the facts in the case. The respondent *Neuman* further testified that he received no instructions from the appellant as to the character of his work. He knew that he was to continue to ride the carriage as he had done on a former job. He was injured after working about one and one-half hours. He did not receive any pay for the time that he worked, and had not made demand for payment. The material testimony is as follows:

*Leonard Neuman:* "When I first made out report of my injury I reported I was working for *Charles Gustafson,* and I thought I was working for *Charles Gustafson* because *Hilgar Gustafson* went over to see him the night before and made arrangements which were satisfactory and came back and told me they were all right and that if *Charles Gustafson* hadn't wanted me to work on the job there would be no job for me. I knew that if *Charles Gustafson* did not want me he had a right to discharge me from the job. . . . Nothing was said about my wages on the *Charles Gustafson* job, but I was told by *Hilgar Gustafson* that *Charles Gustafson* wanted me to ride the carriage on his job and nothing was said about wages and there was no talk between me and *Charles Gustafson.*"

*Hilgar Gustafson:* "When we finished the Reardon logs I was asked by *Charlie Gustafson* to saw his logs and he knew what the agreement was, that he was to furnish the men.  I went over to the *Charles Gustafson* farm and asked him if he would like to keep *Leonard Neuman* on or if he had a man or men enough without him, and he said no, he would like to keep *Neuman* on, and when I came back I told *Neuman* that *Gustafson* wanted him to stay on the carriage, but nothing was said by me to *Charles Gustafson* about *Neuman's* wages.  The next morning we started on the *Gustafson* logs and *Charles Gustafson* and his son Carl came over..  I was to get $8.50 a thousand for sawing the logs, and we worked about an hour and a half when *Neuman* was hurt.  Some one called the doctor, but it was not I. Nothing was said as to who would have a right to discharge *Neuman*.  Sometimes I told the men what to do when they didn't know.  I did that with the man whose logs I was sawing as well as others."

*Charles Gustafson:* "I knew when the arrangements were made that my logs were to be sawed for $8.50 a thousand, that I was to furnish the help, and I knew I was to furnish the help, myself and son, and when *Hilgar Gustafson* came to see me about *Neuman* working it was to see if it was all right with me to have *Neuman* on the job, and I told him it would be all right because I could do something else.  In other words, if *Neuman* stayed on the job I would be free to do other work if I wanted to, and I was merely furnishing *Neuman* as a man in my own place.  I was not to get paid for my work and neither was my son Carl, and when *Hilgar Gustafson* presented a bill to me it was just for $8.50 a thousand, and no wages included in that for anybody. I understood that when *Hilgar* asked me if I wanted *Neuman* on the job that I could have said no, and I understood it was left to me whether I wanted *Neuman* to work on the job or not, and I didn't ask about the wages, but figured that if I was to pay him I would propose to pay him the same as the rest of them who had their work done, and I didn't inquire for that reason.  I thought I would pay him the same as Johnson or any one else did."

Carl Gustafson: "I am the son of *Charles Gustafson* and was present when *Hilgar Gustafson* came over to our place

and talked with my father, and he said he would be ready to start Monday morning and wanted to know if it would be all right to keep *Neuman* on the carriage, as he said it would go quicker to keep him there, and he said he would like to keep him there, and that was all that was said. There was no talk about wages and nothing said about who was employing *Neuman*. My father said he would like to keep *Neuman* on the job and said it was all right, and the next Monday the four of us started sawing the logs and nothing was said by me to *Neuman* about his work or his pay."

To sustain the judgment the respondent relies on *Cayll v. Waukesha Gas & E. Co.* 172 Wis. 554, 179 N. W. 771, and *Ronning v. Industrial Comm.* 185 Wis. 384, 200 N. W. 652. We think neither case is in point.

In the *Cayll Case* the workman was in the employ of Cayll, an excavation contractor, doing ditch-digging and back-filling under contract for the gas company. The gas company was laying pipe in the ditches, and was short of men to keep up with the progress of Cayll. The company asked Cayll for the loan of some men to help them with their work. Cayll loaned the gas company the injured man, after receiving his consent to work for the gas company. In doing this work the injured man was under the control and direction of the gas company, and the company paid Cayll for the workman's time, who in turn paid the workman. The case was decided on the ground that the injured employee consented to be transferred to the service of the gas company, and he was in fact working for the gas company. The injury occurred as a part of the hazard of the business of that company, in doing work over which Cayll had no control and while the workman was solely under the direction of the gas company. While there was no express contract between the workman and the gas company, there was an implied contract within the meaning of the workmen's compensation act.

In the present case it stands without contradiction that

the respondent understood that he was an employee of *Charles Gustafson* and that *Charles Gustafson* had a right to direct his work and discharge him at pleasure; and it appears without dispute that the appellant did not assume to employ the respondent, and it was not a part of his duty to employ the help around the sawmill, but, on the contrary, it was the express duty of *Charles Gustafson* to employ such help,—that the appellant spoke to *Charles Gustafson* about employing the respondent solely as a matter of accommodation.

In the *Ronning Case, supra,* the question turned upon whether the claimant was an employee or an independent contractor.   There was no dispute as to the person for whom the service was performed.

It seems that there is no credible evidence or any reasonable inference indicating that the respondent was employed by the appellant.   For this reason the judgment should be reversed.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment in accordance with this opinion.