TEWES, Executrix, and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents. [Two cases.]

*October 14, 1927—January 10, 1928.*

*Workmen's compensation: Employees found dead at place of employment: Presumption.*

Where two employees of an ice company whose duties included the patrolling of an open channel to keep it clear of ice at night had entered upon the performance of their duties and were later found drowned in the channel, it will be presumed, in the absence of contrary proof, that, having entered upon their work, they met death performing services growing out of and incidental to their employment, within the meaning of the workmen's compensation act (sub. (2), sec. 102.03, Stats.).

APPEAL from judgments of the circuit court for Dane county: A. G. ZIMMERMAN, Circuit Judge. *Affirmed.*

Workmen's compensation. Two appeals are involved, but the facts are the same in each case. The matters were submitted in a single brief and they will be treated as a single case here.

On Saturday, January 9, 1926, Ira W. White and Nels Engberg left home about 5 o'clock in the afternoon in a car to go to work for the L. C. Tewes Ice Company. The duties of White and Engberg as employees were to keep the channel open and to keep a fire in the stove in the plow house. Their hours of employment were from 6 o'clock p. m. to 6 o'clock a. m. During this period, when not engaged in patrolling the channel or tending fires in the plow house, they were permitted to do as they pleased. The channel was an opening in the ice made for the purpose of floating cakes of ice to the icehouse and was about a mile long. On cold nights the channel was kept open by the use of what was known as a night raft, which consisted of a piece of ice about thirty-two feet wide and forty-eight feet long. The raft could be propelled along the channel by hand or by means of a horse, tackle being made fast to the raft by means of a grappling hook. There was no evidence that the raft had ever been propelled by an automobile and considerable doubt was expressed by the witnesses as to whether it would be possible to do so. The raft was moved up and down the channel to prevent freezing. On the night in question there was in addition to the raft a piece of ice which had been broken off of the raft when it was being prepared. The superintendent directed White to pull this piece out of the channel. The next morning this piece of ice was found out in the field where White had been told to pull it. The ice raft was "up at the end of the channel." Whether the witness meant the end near the icehouse or near the opening into the field is not clear.

On the evening of the accident White and Engberg were last seen alive about 7 or 8 o'clock, and at this time they had lanterns as they started out to work. Their bodies were found in the channel next day. There was no witness to the drowning. One witness testified that they did not see White or Engberg with a horse, but on the night of the accident he had heard White say to Engberg in the early part of the evening, "You get the horse and I will meet you within three quarters of an hour in the engine room." No one saw them start out with the horse, and the next morning the horse was found standing in the barn tied to the manger with the harness on. About three quarters of a mile from the icehouse White's automobile was taken from the channel. Engberg's body was found about two or three hundred feet from the end of the channel where it opened into the field. White's body, after being dragged some distance, was taken from the water about 1,500 feet from where his car was found. When the car was taken from the water there was no rope on the rear axle, no chains on the wheels, and the lights of the car were turned off. The locality where the men's bodies were found was not in the direction of the men's homes from the icehouse. Their watches stopped at about 9 : 45 p.m. Their lanterns were seen about 1 : 15 in the morning still burning near the company's building. In the opinion of witnesses the ice did not freeze enough on the nights of January 9 and 10, 1926, to make it necessary to patrol the channel with a night raft because the weather was mild and the wind was blowing. There was no testimony as to the direction from which White's automobile approached the channel except that of one witness who testified that he had gone out on the ice early next morning after the men were drowned and had seen automobile tracks on the ice near the channel as he was going out to work with the horse attached to a gas plow. He said the tracks came up kind of diagonal to the channel. The witness testified that at the time he

observed the tracks he did not know that anything had happened to White and Engberg. The evidence was not voluminous. We have endeavored to state it in outline.

Upon the evidence the *Industrial Commission* found that the deceased employees, "while performing services growing out of and incidental to their employment, accidentally sustained injuries resulting in death," and awards were made accordingly in each case, and in each case an action was begun by the employer and the insurance carrier to review the award of the *Commission*. Upon the hearing in circuit court, the circuit court affirmed the award, judgment was entered accordingly, from which the plaintiffs appeal.

For the appellants there were briefs by *Olin & Butler* of Madison and *Good, Childs, Bobb & Wescott* of Chicago, attorneys, and *Dwight S. Bobb* and *F. M. Hartman,* both of Chicago, of counsel, and oral argument by *F. M. Hartman.*

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

The following opinion was filed November 8, 1927:

Rosenberry, J.  The sole question presented here is whether or not there is evidence sufficient to sustain the finding of the *Industrial Commission* that the deceased employees were at the time they met their death performing services growing out of and incidental to their employment. Workmen's Compensation Act, sub. (2), sec. 102.03.

It is undisputed that if they were not performing service growing out of and incidental to their employment the master is not liable under the workmen's compensation act. *Radtke Bros. & Korsch Co. v. Rutzinski,* 174 Wis. 212, 183 N. W. 168; *Hoenig v. Industrial Comm.* 159 Wis. 646, 150 N. W. 996. It is equally well established that the findings of the *Industrial Commission* must be supported by evidence and cannot be sustained if they are based upon mere conjecture. *Wm. Esser & Co. v. Industrial Comm.* 191 Wis. 473, 211

N. W. 150; *Lewis v. Industrial Comm.* 178 Wis. 449, 190 N. W. 101. There is no direct evidence in the case which shows what the deceased employees were doing at the time immediately preceding the instant they were precipitated into the water in the open channel. It does appear, however, without dispute, that they were old experienced and reliable men who needed no instructions from their superiors with respect to the performance of their duties; that they entered upon the performance of their duties as employees and were engaged in the performance of those' duties when last seen alive. It further appears that their bodies were found in the open channel at a point where they might properly be in the discharge of their duties; that their watches stopped one at 9 : 42 and one at 9 : 47. They were last seen alive a little before 8 o'clock. There is no circumstance disclosed by the evidence which shows that they had departed from the course of their employment. It is argued that because the night was not cold and the fact as to the condition of the channel could have been better ascertained near shore, there was no necessity for them to go out along the channel for the purpose of inspection, and that they must therefore have been out along the channel for some purpose of their own. What such purpose was or might have been is not disclosed. Some suggestion is made that they may have started for the near-by village to spend the evening playing cards. If that was their purpose it would not have been necessary for them to go near the channel.

There being nothing in the evidence to show what the deceased employees were doing at the instant immediately preceding the accident, may it be inferred, nothing appearing to the contrary, they having entered upon the performance of their duties and being found at a point where they might properly be in the performance of their duties, that they continued in the discharge of their duties? It is certainly just as reasonable to suppose that one of the men may have fallen into the water and the other taken the automobile to

go to his rescue with greater speed as it is to suppose that they were out there for no purpose whatever. But it is not necessary to make such a supposition or inference. It is not improbable that one of the men may have been engaged in taking the piece of ice out of the channel in accordance with the superintendent's directions; that he fell in, and that his companion went to his rescue, using the automobile for that purpose.

It is considered that when it is established that employees have entered upon the performance of their duties and are found at a place where they might properly be in the discharge of those duties, nothing appearing to the contrary, the presumption of continuity obtains, and the evidentiary facts support the inference that at the time of the accident the employees were performing a service for the employer growing out of and incidental to their employment. *Ellis v. State,* 138 Wis. 513, 119 N. W. 1110; *Heileman B. Co. v. Industrial Comm.* 161 Wis. 46, 152 N. W. 446; *Interlake P. & P. Co. v. Industrial Comm.* 186 Wis. 228, 202 N. W. 175.

The circumstance most strongly relied upon to repel this presumption is the fact that the deceased employees were not accustomed to use the automobile in the discharge of their duties and that under ordinary circumstances it was not necessary for them to do so. No one knows the circumstances which induced one or the other or both of the deceased employees to use the automobile. It might have been properly employed in the discharge of their duties, it might have been used for some other purpose. No circumstance points significantly either way. In this situation it is considered that the presumption of the continuity of a state of things once established must prevail.

*By the Court.*—Judgment in each case affirmed, with costs.

A motion for a rehearing was denied, with $25 costs, on January 10, 1928.