CITY OF MILWAUKEE, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*May 3—June 4, 1935.*

500

For the appellant there was a brief by *Max Raskin,* city attorney, and *John E. Megna,* assistant city attorney, and oral argument by *Mr. Megna.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

MARTIN, J.   The respondent, Martin Jach, sustained injuries on October 1, 1931, at which time he was employed by the city of Milwaukee as an ash carrier.   He had charge of three men and was required to report each morning to the foreman at the ward yard between 7 and 7:30 o'clock. He reported each morning on the work done the previous day, and would receive orders for the then day's work.   On the morning of October 1, 1931, he reached the yard at about 7 o'clock and entered a shed in the yard to see who was there.   The foreman had not arrived.   He and two other men went outside of the yard to wait for the foreman. While awaiting the arrival of the foreman, he and the two men stood outside of the yard between the walk and the yard fence at the gate entrance.   At about 7:15 a. m. a

team of horses hitched to one of the city wagons in the yard became frightened, and in going through the gate pulled the fence down, injuring respondent Jach and the two other men. The appellant contends that at the time of the accident respondent was not performing services growing out of and incidental to his employment.

The issue here is a simple one. There is no dispute in the facts. Mr. Jach in the course of his employment was required to report each morning to the foreman for the ward between 7 and 7:15 o'clock. The time for starting work was 7:30, but he was required to make his report on the previous day's work and receive instructions for the present day's work before that time. The statute involved, sec. 102.03, Stats. 1931, provides, in part:

"(1) Liability for compensation shall exist against an employer for any disability sustained by his employee, and for his death, in cases where the following conditions of compensation concur: . . .

"(b) Where, at the time of the injury, the employee is performing services growing out of and incidental to his employment. · Every employee going to and from his employment in the ordinary and usual way, while on the premises of his employer, shall be deemed to be performing services growing out of and incidental to his employment; and so shall any fireman responding to a call for assistance outside the limits of his city or village, unless such response is in violation of law."

Appellant contends that, because of the absence of the yard foreman and the fact that Mr. Jach had not reported to such foreman prior to sustaining his injuries, the relationship of master and servant had not attached. We cannot agree with this view. Appellant's counsel in his brief states:

"Had the foreman [of the yard] been on the premises at the time, with or without the knowledge of Mr. Jach, we concede a different situation might be here presented."

We consider it immaterial that the foreman had not arrived at the yard prior to the time of the accident. When Mr. Jach entered the yard to make his report to the yard foreman, he was reporting for work. He was required to present himself and be ready to make his report whenever the foreman would be available to receive it. Having presented himself at the yard, and having remained in readiness to give his report, he must be said to have entered into the course of his employment at the time he entered the yard. Had the foreman failed to arrive until some time after 7:30, it could not be successfully contended that Mr. Jach had not checked in and begun his day's work merely because the foreman was not present to receive his report.

In *Simmons Co. v. Industrial Comm.* 211 Wis. 445, 449, 248 N. W. 443, the employee checked in at 6:30 in the morning, although work did not commence until 7 o'clock, and was required to punch a time clock on an upper floor of another building and then go downstairs in that building to his place of work. He fell down an elevator shaft which could be reached only by deviation from the straight line to the time clock. This court said:

". . . Under the statute he had begun service when he checked in. Continuance in it is presumed to continue when once shown in absence of evidence showing the contrary. *Tewes v. Industrial Comm.* 194 Wis. 489, 215 N. W. 898; *Racine County v. Industrial Comm.* 210 Wis. 315, 246 N. W. 303."

In *Badger F. Co. v. Industrial Comm.* 195 Wis. 134, 136, 217 N. W. 734, where the employee was injured while waiting for the signal to commence work, the court said:

". . . That his presence in the shop a few moments prior to starting work was a necessary part of his employment is too evident for any contention on that point. That the compensation act covers such exigencies has been held over and over again by this court."

In *Yawkey-Bissell Lumber Co. v. Industrial Comm.* 215 Wis. 99, 101, 102, 253 N. W. 793, the employee by mistake took carbolic acid instead of castor oil at a time when he was through with his day's work and was waiting for his daughter to come and take him home. In affirming a judgment of the circuit court, which confirmed an award of the Industrial Commission, this court said:

". . . Although it is true that Edwards was awaiting the arrival of his daughter to take him to her home for the week-end, he was nevertheless, at the time of the accident, still in his place of employment and in the service of, and apparently ready to serve his employer, in his capacity of clerk of the store, which constituted the place of his employment. Under the circumstances and particularly in view of the decisions in *Badger F. Co. v. Industrial Comm.* 195 Wis. 134, 217 N. W. 734, and *Wisconsin Mut. L. Co. v. Industrial Comm.* 202 Wis. 428, 232 N. W. 885, the commission was warranted in holding that the relationship of employer and employee then existed, even though Edwards intended to leave for the week-end upon his daughter's arrival."

And so we hold in the instant case that as soon as Mr. Jach came upon his employer's premises on the morning of the accident, ready for work, his services began, and the relationship of master and servant immediately attached.

Appellant also contends that Mr. Jach was not on the premises of the city of Milwaukee within the meaning of the compensation act when injured. The testimony shows that at the time of the accident Mr. Jach was standing on the outside of the yard fence between the fence and the sidewalk about six or eight feet from the driveway into the yard. In *Badger F. Co. v. Industrial Comm., supra,* the court said:

"The compensation act covers not only the particular work that the employee is engaged to perform, but it covers the employee while he is engaged in the necessary incidents thereto." (See cases therein cited.)

In *Racine County v. Industrial Comm., supra,* at page 318, where a supervising teacher was found drowned in a river which was not on the direct highway from Burlington to her home, the court said:

" . . . If it affirmatively appeared that she delayed her departure or departed from the direct route for some personal reason, it would not take her without the act. *Fronce v. Prosperity Co.* 255 N. Y. 613, 175 N. E. 336; *Webb v. North Side Amusement Co.* 298 Pa. St. 58, 147 Atl. 846. But no personal reason appears, and the deviation from the most direct route, entailing only six miles additional travel, did not constitute any substantial or material variation, especially as she may have considered it a better or safer route for night travel, or may have gotten onto the road where found by mistake at a point where it branched off from the direct route at a somewhat acute angle."

Appellant contends that the instant case is ruled by the decisions in *Krebs v. Industrial Comm.* 200 Wis. 134, 227 N. W. 287; *Hornburg v. Morris,* 163 Wis. 31, 157 N. W. 556; and *Caravella v. Milwaukee,* 194 Wis. 190, 215 N. W. 911. These cases are readily distinguishable. In the *Krebs Case,* the employee was on his way to work, and while walking on a public sidewalk some twenty feet from the employee's entrance was injured by a motorcycle driven across the sidewalk on a driveway leading into the plant. This court held that the employee was not injured on the employer's premises, and was not entitled to compensation.

In the *Hornburg-Morris Case,* a fireman was injured on the city streets on his way to work. The court held that the city streets were not the premises of the employer within the meaning of the Workmen's Compensation Act.

In *Caravella v. Milwaukee, supra,* a street cleaner was injured while on his way to the city yard at which he was required to report prior to proceeding to his work. His assigned territory included the place of the accident. The court held that his injury did not arise out of and in the

course of his employment, because the accident happened before he had reported for duty. The court said, at page 192 :

". . . The use he was making of the public highway at the time of the injury was the same that any other pedestrian might make; he was not using it within the scope of his service. That in going from his home to the yard before starting his employment he happened to travel the same street that he might later be required to be upon in the course of his employment did not make such point, at the moment of the injury, the premises of or the place of employment of the city within the intent and meaning of the compensation act."

The distinction is that in the instant case Mr. Jach had reported at the yard. He had entered upon the premises of his employer in the performance of the duty required of him. He was at work, not going to work, as was the situation in the cases cited by appellant's counsel.

Considerable effort was made to show that the space between the fence and the sidewalk where Mr. Jach was injured was beyond the property line. Whether this space constituted the premises of the city becomes material only in case Mr. Jach was injured while going to work. We have concluded that he was already at work, and consequently his right to compensation is not dependent on the question of whether the strip between the fence and the sidewalk constituted city premises. However, the word "premises" has not been given a narrow construction in the compensation act. In *Northwestern Fuel Co. v. Industrial Comm.* 197 Wis. 48, 50, 221 N. W. 396, where an employee was injured while riding a bicycle over a public highway which, however, his employer used as a part of his premises, this court said:

"We are constrained to hold that the term 'premises of his employer' as used in this statute should not be construed to be limited to the soil over which he has legal dominion or title, but to that which he uses, to all intents and purposes, as his premises."

*By the Court.*—Judgment affirmed.