FLITEWAYS, INC., and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.*

*October 25—November 26, 1946.*

* Motion for rehearing denied, with $25 costs, on January 22, 1947.

For the appellants there was a brief by *Dougherty, Arnold & Kivett,* and oral argument by *Clifford C. Kasdorf,* all of Milwaukee.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Verna Tobin there was a brief by *Padway & Goldberg,* attorneys, and *David Previant* of counsel, all of Milwaukee, and oral argument by *Mr. Previant.*

FOWLER, J.    The case is an appeal from a judgment of the circuit court confirming an award of the Industrial Com-

mission under the Workmen's Compensation Act based upon the death of an employee of the plaintiff employer while acting in the course of his employment. The contention of the appellants is that there is no evidence to support the finding of the commission that the death occurred in the course of the deceased's employment.

The deceased, Kenneth Tobin, was an employee of the plaintiff Fliteways, Inc., which will hereinafter be referred to as the "plaintiff." The plaintiff conducted an airfield for the accommodation of its airplanes, and was engaged in giving instruction to persons learning to fly airplanes. Tobin was one of its employee pilots whose duty it was to give such instruction. He met his death shortly after taking off in an airplane of plaintiff from plaintiff's airfield with a student to whom the plaintiff had contracted to give instruction and who had taken off with Tobin for instruction pursuant to the plaintiff's contract. Shortly thereafter the airplane crashed to earth and both Tobin and the student were killed in the crash. The plane was of dual-contact type which gives to both pilot and student control of the plane. In such case the hands of the student sometimes "freeze" on the control in his hands, and such "freezing" makes it impossible for the instructor to get control of the plane in time to prevent crashing. There is no direct evidence as to who was in control at the time of the crash.

The evidence is undisputed that when the plane was first seen after leaving the airfield it was at an elevation of two hundred to three hundred feet. At this time the speed of the plane was such as to sustain it in flight. Just before the plane crashed the left wing struck an electric wire less than forty feet from the ground. A flash of flame was then seen and the plane fell immediately to the ground and when on the ground it was burning. The wings were nearly vertical when the wing struck the wire. Just before the plane started to fall the tail shot up. It struck the ground eighty-six feet from a tavern two miles from the plaintiff's airfield. Tobin was

flight instructor of the keeper of the tavern who was taking a course of lessons in flying. Tobin's name was on the propeller of a plane mounted in the tavern.. The name of the tavern is "Cardinal Club." Tobin occasionally visited the tavern. He was a member of the Cardinal Flying Club, a club for flyers at the tavern. The noise of the plane at the time was loud. The sound of the motor was perfect. The weather conditions were proper for flying, though subject to "gusts" of wind. The flying regulations with which Tobin was instructed by the plaintiff to comply require that instructions to students in making steep turns shall be given at a minimum height of fifteen hundred feet and that the minimum height for flying under any condition is five hundred feet. The tavern near which the plane fell was a one-story flat-roofed building. As the plane was flying over this building the noise of the plane was so loud that the building vibrated from the sound waves, a picture on the wall shifted and a wing of the model plane mounted therein fell off.

Upon this evidence the examiner of the commission found that the deceased was acting in course of his employment at the time the plane fell. His reasoning was that when the plane took off he was unquestionably acting in the course of his employment, and that being then so engaged the presumption arises that he continued in the course of his employment until the evidence shows a deviation from that course. The examiner concluded that deviation from such course was not shown. The commission took the same view, citing *Tewes v. Industrial Comm.* 194 Wis. 489, 215 N. W. 898, and the circuit court held that the evidence supported the conclusion of the commission.

The appellants produced as a witness a pilot of experience who heard all the evidence. That evidence was in detail stated to him in a hypothetical question. He was asked, in substance, whether assuming the facts to be as detailed in the question, he had "an opinion as to the object of the operator of the airplane who was at that time operating it." He an-

swered that he had, and that in his opinion such "person intended to 'communicate his presence to somebody on the ground or within a building." So operating a plane with such intention is commonly called "buzzing" by pilots.

It is to be noted that the question put to the witness is hardly one calling for expert testimony. It in effect called on the witness to say whether the evidence showed that the person operating the plane was attempting to communicate with a person on the ground or within a building. That question the commission was as competent to decide as the witness. There was no evidence as to what maneuvers pilots execute when intending so to communicate. No question of the mechanics of or skill in plane operation was involved in the question.

The appellants contend that under the rule of *Sheboygan Airways, Inc., v. Industrial Comm.* 209 Wis. 352, 358, 245 N. W. 178, Tobin "voluntarily entered upon stunt or acrobatic flying . . . which, contrary to his duty to save and protect his employer's property, subjected it to great and needless peril," and that Tobin was then "clearly outside of the scope of his employment." They contend in effect that, under the testimony as to the facts above briefly summarized and the testimony of the airplane pilot introduced by them, the commission was compelled to conclude that Tobin, when he met his death, was not acting within the scope of his employment. Their position is in effect that there being no expert opinion to the contrary of the opinion of the pilot, the commission was compelled to accept the opinion of the expert.

We think that under the evidence above summarized, and the rule of the *Tewes Case, supra,* the trial court properly sustained the view of the commission. That rule is stated on page 494 of the *Tewes Case* opinion to be:

"It is considered that when it is established that employees have entered upon the performance of their duties and are found at a place where they might properly be in the discharge

of those duties, nothing appearing to the contrary, the presumption of continuity obtains, and the evidentiary facts support the inference that at the time of the accident the employees were performing a service for the employer growing out of and incidental to their employment."

The rule of the case of *Sheboygan Airways, Inc., v. Industrial Comm., supra,* relied on by appellants is page 358:

"If while in flight, at their [his passengers'] instigation or otherwise, he [a pilot] intentionally departed from the usual and customary method of operating an airplane in transporting passengers, and, in order to gratify his or their desire for an extraordinary thrill, he voluntarily entered upon stunt or acrobatic flying by undertaking a power dive, which, contrary to his duty to save and protect his employer's property, subjected it to great and needless peril, then he was clearly outside of the scope of his employment at the time of his injury."

To overcome the effect of the rule of the *Tewes Case, supra,* the commission had to decide from the evidence that shortly before the wing of the plane struck the electric wire Tobin voluntarily entered upon stunt or acrobatic flying, or that he rather than the student was "buzzing," or that he was voluntarily permitting the student to be "buzzing." The commission decided that the evidence did not so show. Whether it did so show was a question of ultimate fact for the commission to decide, and their decision must be sustained if there is any substantial credible evidence to sustain it, or if in their view the credible evidence is insufficient to show deviation from the course of employment entered upon. They could as well determine that the evidence did not establish one fact as that it did establish another. They determined that the evidence established that when Tobin entered upon the trip he was acting in the course of his employment, and that it did not establish that he departed from that course. That the plane was below the minimum height allowed by his employer for flight did not of itself defeat recovery. See *Gimbel Bros. v.*

*Industrial Comm.* 229 Wis. 296, 302, 282 N. W. 78, where it is said that "If an employee is otherwise acting within the scope of employment, recovery is not defeated because he violated some rule or statute." Mere violation of a rule, no more than any other act of negligence by an employee, does not necessarily deprive him or any other beneficiary of the Workmen's Compensation Act of the protection conferred by it.

*By the Court.*—The judgment of the circuit court is affirmed.

* Motion for rehearing denied, with $25 costs, on January 22, 1947.